O. A. EDWARDS AND C. H. HALL, ADMINISTRATORS OF JOHN R. PACE ESTATE, AND PATTIE PACE EDWARDS AND IRENE PACE HALL, v. J. B. PERRY.

(Filed 29 April, 1936.)

**Trial C a—Allowing counsel to read from opinion of Supreme Court held error under the facts as tending to impeach party's own witness.**

Plaintiffs introduced defendant as their own witness, and also introduced in evidence a receipt for money signed by defendant-and the receipt book showing that the stub of the receipt had been torn out. Defendant as a witness did not deny that the amount had been received by him. Plaintiffs' counsel, in his argument to the jury, was allowed, over defendant's objection, to read the facts and law from an opinion of the Supreme Court to the effect that where a party failed to present evidence in his possession the law presumed that such evidence withheld was detrimental to such party, plaintiffs' counsel maintaining that the fact that the receipt stub had been torn out prior to the production of the receipt book upon plaintiffs' order for the production of records and documents, should be considered against defendant. *Held:* Under the facts and circumstances of this case allowing plaintiffs' counsel to read from the opinion of the Supreme Court tended to impeach and discredit the testimony of defendant in his testimony as plaintiffs' own witness, which constituted prejudicial and reversible error upon defendant's exception.

DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Frizzelle, J.,* and a jury, at Second October
Term, 1934, of WAKE.   New trial.

The plaintiffs O. A. Edwards and C. H. Hall are the duly appointed
and qualified administrators of the estate of John R. Pace, who died
about 1 July, 1930.   (Pattie Pace Edwards and Irene Pace Hall are
the wives, respectively, of Edwards and Hall.)   This action was
brought by plaintiffs on 20 October, 1931, against the defendant for an
accounting and settlement.   John R. Pace was a farmer and defendant
J. B. Perry a merchant, doing business at Youngsville, N. C.   In plain-
tiffs' original complaint the gravaman was to recover $2,450.40, with
interest from 27 September, 1930, on insurance collected by defendant
from the Mutual Life Insurance Company of New York.   The plaintiffs
contended that the Mutual Life Insurance Company of New York had
no right to pay this amount to defendant.

The plaintiffs' prayer is as follows: "(1) That they recover of the
defendants, and each and either of them, the sum of $2,450.40, with
interest from 27 September, 1930, until paid, subject to a credit for such
amount, if any, as the court shall find due assignee.   (2) For an ac-
counting between plaintiffs and defendants, and a detailed statement of
the account of John R. Pace claimed by defendant J. B. Perry.   And
for all such other and further relief as to the court may seem proper."
In this action the insurance company was not made a party defendant.

In defendant's answer he admitted that he received this insurance
money, but alleged that the policies were assigned to him for debts then
existing and advancements to be made.   That the premiums to the
amount of $844.70 were paid on the policies by defendant and the sum
has been properly applied on the indebtedness due by J. R. Pace to
defendant.

In a further answer the defendant sets up the transaction in reference
to the insurance policies and a counterclaim showing the dealings be-
tween J. R. Pace and defendant: "This defendant alleges that plaintiffs'
intestate is now indebted to this defendant in the sum of $933.61, balance
due on account of premiums paid $475.79, with interest on insurance
policies and for goods, wares, and merchandise sold and delivered, and
for $3,446.30 due on the notes secured by the deed of trust hereinbefore
described.   Wherefore, this defendant prays judgment: (1) For $933.61
due by account.   (2) For $3,446.30 due by notes secured by deed of
trust on lands in Franklin County.   (3) That said sum of $3,446.30 is
a lien on the land described in the deed of trust from J. R. Pace and
wife to J. A. Williams, registered in the office of the register of deeds for
Franklin County, in Book 193, page 241."

The plaintiffs made reply and denied that defendant paid the amount
claimed on insurance premiums, or any other sum, except such sums as

were repaid to defendant by J. R. Pace. Plaintiffs denied defendant's counterclaim, and alleged that plaintiffs paid defendant all that was due him, and prays: "(1) That the defendant J. B. Perry recover nothing on his counterclaim. (2) That the defendant be required to render to plaintiffs a proper accounting for the money collected by him involved in this case. (3) That a proper accounting be had, and for judgment against the defendant J. B. Perry for such sum as the court shall find due plaintiffs by reason of overpayment on account and notes claimed by said defendant in addition to the $2,450.40 insurance money. (4) That the defendant be required to deliver up to plaintiffs all notes and mortgages held by him affecting plaintiffs' property."

Cranmer, J., on 18 April, 1933, signed a consent order referring the matter to R. N. Simms, Jr., "to take and state the account between the parties, and the said referee shall report his findings of facts and conclusions of law to the term of court beginning 22 May, 1933."

Thereafter, on 5 December, 1933, R. N. Simms, Jr., filed his report as referee. It contains 10 pages and seems to go carefully into every phase of the controversy. It gives in detail the account between J. B. Perry and J. R. Pace, and in the report is the following: "That, as is shown by the foregoing statement of the account, there is a balance in favor of the defendant Perry in the sum of $1,543.08. Upon the foregoing findings of fact and conclusions of law, the referee is of the opinion that judgment should be entered in this cause in favor of the defendant J. B. Perry and against the estate of John R. Pace for the sum of $1,543.08, with interest thereon from 20 November, 1933, until paid; and it should be provided that appropriate entries should be made upon the securities dealt with in this cause and affected by the said judgment. The referee files with the clerk of this court all the exhibits which were offered in evidence by the parties."

Both plaintiffs and defendant made certain exceptions to the referee's report. On 2 January, 1934, at the Special Term of the Superior Court of Wake County, the case came on for hearing on the exceptions. The court set forth certain issues for the jury to determine at a subsequent term. The matter was heard before Frizzelle, J., at November Term, 1934, of Wake Superior Court, and on the findings of the jury on the issues, the judgment in part is as follows: "It is, therefore, ordered, adjudged, and decreed that the plaintiffs have and recover of the defendant the sum of $5,137.02, with 6 per cent interest thereon from 30 November, 1933, until paid, together with the cost of this action; and it is further ordered that the defendant cancel the $850.00 note and the two $950.00 notes with the mortgages and deeds of trust securing the same, and deliver them to the plaintiffs, plaintiffs to pay balance due referees and stenographer under previous orders."

The plaintiffs introduced defendant as a witness, and the findings of the jury were based on defendant's testimony, books produced by him, etc. He testified to the transactions between Pace and himself during the long course of dealings. The record discloses: "The plaintiffs served notice upon the defendant to produce all day books, journals, ledgers, cash books, fertilizer books, receipt books, cotton weighers' certificates, and all other records in his possession containing accounts of J. R. Pace. . . . The defendant produced day books, journals, and ledgers containing account of J. R. Pace through July, 1924; also two receipt books and fertilizer books."

As plaintiffs' witness, the defendant, in giving in detail the various dealings over the years, testified: "This is a receipt for $400.00 that I gave J. R. Pace on 10 June, 1919. I don't know where I credited the $400.00. The duplicate receipt is not in the receipt book. I could not tell why the page was torn out. I gave Mr. Pace other receipts on that day. The $1,503.00 and the $400.00 were not given in payment of the $1,900 note. On 10 June, 1919, Mr. Pace owed me $172.54 on his merchandise account."

The defendant submitted several prayers for instruction, among them is the following: "That the plaintiffs made the defendant their witness and cannot impeach him or deny what he said. The only thing they can do is to show by other evidence that the facts were otherwise than as stated by their witness. There is no other evidence."

The record discloses: "The plaintiffs exhibited to the jury a receipt book produced by the defendant, from which the page containing the $400.00 duplicate receipt dated 10 June, 1919, had been torn out. The defendant objected on two grounds: (a) That the plaintiffs could not impeach their own witness; (b) that the plaintiffs had the original receipt and nothing the defendant could do to the stub could injure him. Objection overruled; defendant excepted and assigned error. The plaintiffs' attorney, in his argument to the jury, stated that defendant had failed to produce certain books and records for which demand had been made and read to the jury from the case of *Yarborough v. Hughes*, 139 N. C., 199, relative to the effect or failure to produce documents in one's control. Defendant objected and assigned error," and appealed to the Supreme Court.

*E. D. Flowers and J. G. Mills for plaintiffs.*
*Gulley & Gulley for defendant.*

CLARKSON, J. Prayer for instructions and exception and assignment of error were made by defendant to the fact that defendant was plaintiffs' witness, and the evidence was not sufficient to go to the jury on cer-

tain issues submitted. We will not go into this phase of the case, as the case goes back for a new trial.

Defendant excepted and assigned error as follows: "The plaintiffs' attorney, in his argument to the jury, stated that defendant had failed to produce certain books and records for which demand had been made, and read to the jury from the case of *Yarborough v. Hughes,* 139 N. C., 199, relative to the effect of failure to produce documents in one's control." We think this exception and assignment of error should be sustained.

In *Conn v. R. R.,* 201 N. C., 157 (160-1), *Brogden, J.,* says: "The third class of inhibitions denies to counsel the right to read the decisions of the Supreme Court of North Carolina where such reading would reasonably tend to prejudice either party upon the facts. *S. v. Corpening,* 157 N. C., 621; *Forbes v. Harrison,* 181 N. C., 461; *Elliott v. Power Co.,* 190 N. C., 62. Thus, in the *Corpening case, supra,* the Court said: 'As we understand the record, the counsel for the prosecution read the facts in *Malonee's case,* relied upon as supporting evidence to the prosecutrix, and over defendant's objection was allowed by the court to say in effect that a jury of Jackson County had convicted Malonee, and the supporting evidence was much stronger "than in *Malonee's case,*" etc. A new trial was awarded because the trial judge permitted such argument to be made. In the *Forbes case, supra,* counsel attempted to read a portion of the opinion in *Bell v. Harrison,* 179 N. C., 190, and upon objection by counsel for defendant the court declined to permit such reading, and this ruling was upheld. The court observed "that two cases grew out of said administration, and there was grave danger of prejudicing the defendants upon the facts as counsel was allowed to read the part of the opinion in the case proposed to be read by him." ' "

The plaintiffs cite the case of *Howard v. Telegraph Co.,* 170 N. C., 495 (497): "The court erred in refusing to permit the counsel to argue that the ruling in *Cashion v. Tel. Co.,* 123 N. C., 267, applied to this case. Revisal, 216, provides that in jury trials counsel may argue the law as well as the facts to the jury. This is entirely distinct from the instances in which the court has refused to permit counsel to read the facts in one case as evidence in another." This case is distinguishable from the *Conn case, supra,* and the present case.

The plaintiffs had the receipt for $400.00. The defendant was plaintiffs' witness and made no denial that the amount had been received by him. The reading of the facts in the *Yarborough case, supra,* and the law applicable to same, would undoubtedly prejudice the jury and throw suspicion and discredit on defendant's testimony, who was plaintiffs' own witness. For example, at pp. 208-9, the law applicable to the facts

in that case is thus stated: "It is the failure to introduce testimony, oral or written, which should be valuable to a party, that raises the inference against him that, if introduced, it would be detrimental to his case. The relevancy and weight of such a fact as evidence is established by one phase of the maxim *omnia præsumuntur contra spoliatorem,* which is said to rest upon logic, and the presumption it raises to be reinforced by our everyday experience that men do not as a rule withhold from a tribunal facts beneficial to themselves. It is therefore laid down in the books as a well settled principle that where a party fails to introduce in evidence documents that are relevant to the matter in question and within his control, and offers in lieu of their production secondary or other evidence of inferior value, there is a presumption, or at least an inference, that the evidence withheld, if forthcoming, would injure his case."

It will be seen that plaintiffs were attempting to impeach their own witness by reading the facts in the *Yarborough case, supra,* and the law applicable to the facts as above set forth, so as to cast suspicion and wrongdoing on defendant. The plaintiffs had the original receipt for the $400.00, and the fact that the stub showing this $400.00 receipt was torn out could in no wise injure plaintiffs. Reading the facts and the law in that case, under the facts and circumstances of this case, we think was prejudicial to defendant as the verdict of the jury indicated. The referee, from an elaborate finding of facts and conclusions of law, found that plaintiffs owed defendant $1,543.08. On the evidence of defendant, a witness for plaintiffs, the jury found that defendant owed plaintiffs $5,157.02. To say the least, it is an unusual verdict, and there was prejudicial error, as we have set forth.

For the reasons given, there must be a
New trial.

DEVIN, J., took no part in the consideration or decision of this case.