CLARK, C. J., dissenting.
It is not to be expected that we should discuss all of the assignments of error, ninety-four in number, and it is not conceivable that a judge commissioned to hold the courts of the State should have committed so many errors in the trial of an action to recover damages for negligence.
Much useless labor is imposed on counsel and the courts by the multiplication of exceptions, and the practice would seem to be defensible only upon the ground that counsel do not feel confident that any exception is well taken, but hope to form a chain strong enough to sustain a new trial.
We have carefully examined the exceptions arising on the first and second issues, and find no substantial error, but we are of opinion there was error in permitting the plaintiff to place before the jury on the cross-examination of Dr. Laughinghouse the opinions of three distinguished experts, Strumpell, Osler, and Forsheimer, when these opinions had not been given under the sanction of an oath, and when the experts had not been subjected to a cross-examination.
Mr. Chamberlayne in Modern Evidence, vol. 1, sec. 859b, says: "Judicial administration views, therefore, with conspicuous apprehension and suspicion the use, in dealing with the jury, of works of science containing a large proportion of statements resting upon incomplete observation and moral evidence," and he speaks of this field of (657) investigation as the "fog-enshrouded, mirage-haunted house of the expert," the "battle-ground of theory," and the authorities in this State and elsewhere, except when allowed by statute, generally condemn the use of medical books in the trial of issues of fact, and if the book cannot be introduced to prove the opinion of the writer, the attempt to make the proof by examining a witness who has read the book simply subjects the evidence to the additional objection that the party must offer the best evidence, and that secondary evidence will not be admitted when the primary evidence is easily available.
The question has been considered in this State in Melvin v. Easley,46 N.C. 386; Huffman v. Click, 77 N.C. 55; Horah v. Knox, 87 N.C. 483; S.v. Rogers, 112 N.C. 874; Butler v. R. R., 130 N.C. 15; Lynch v. Mfg.Co., 167 N.C. 98.
In Huffman v. Click the Court says, in speaking of the use of medical books before the jury: "If the work is read, it must be to prove the truth of the facts contained in it, and the justness of the conclusions which the author draws from these facts. But if medicine is a science (and it claims to be such), it belongs to that class called `inductive *Page 729 
science.' Such treatises are based on data constantly shifting with new discoveries and more accurate observation, so that what is considered a sound induction today becomes an unsound one tomorrow. The medical work which was `a standard' last year becomes obsolete this year. Even a second edition of the work of the same author is so changed by the subsequent discovery and grouping together of new facts that what appeared to be a logical deduction in the first edition becomes an unsound one in the next. So that the same author at one period may be cited against himself at another. The author of such works do not write under oath; the books themselves are therefore often speculative, sometimes mere complications, the lowest form of secondary evidence; and as the authors cannot be examined under oath, the authorities on which they rely cannot be investigated nor their process of reasoning be tested by cross-examination. Such writings are nothing more or less than hearsay proof of that which living witnesses could be produced to prove. Wharton Law Evidence, sec. 665. "And in Lynch v. Mfg. Co., where the general question as to whether all medical authorities agreed on a certain point was admitted: "It is very generally recognized that extracts from medical books are not admissible in evidence, and for the very sufficient reason that the author does not write under the sanctity of an oath and had not been subjected to cross-examination, and the decisions of this State are to the effect that statements from these books may not be presented as such in the arguments of counsel nor introduced by means of questions put on cross-examination, as by reading an opposing opinion from a text-book and asking the witness if it is true or not true, for this would have the effect of putting the statement (658) in evidence, and thus accomplish by indirection what is expressly forbidden, Butler v. R. R., 130 N.C. 15; Huffman v. Click,77 N.C. 55; Melvin v. Easley, 46 N.C. 386; for, as said by Bynum, J., in Huffman's case: `If this practice were allowed, many of our cases would soon come to be tried not on the sworn testimony of living witnesses, but upon publications not written under oath.'
"The principle, however, is not as exigent in case of cross-examination, and when a witness has testified as an expert, professing to have special training and knowledge from standard works of his profession, a general question of this kind may be allowed with a view of testing the value of his opinions."
These decisions are sustained by the opinions of other courts and by the text writers generally.
In Allen v. R. R., 212 Mass. 191, it was held on the trial of an action of tort against a street railway company for personal injuries alleged to have been caused by a collision of cars, a medical expert, testifying for the defendant, could not be asked on cross-examination whether he *Page 730 
was familiar with any authorities which said that a certain disease with which the plaintiff contended he was suffering as a result of the accident might come as a result of a blow, nor could he be asked questions about books written by persons other than himself. The Court said: "It hardly has been contended that the cross-examination of Dr. Baldwin was proper. The evidence thus obtained was plainly incompetent. It comes under the settled rule that neither medical books, though of recognized authority, nor the opinions of medical experts, unless testified to by themselves as witnesses, can be received as evidence (citing a number of Massachusetts cases). That cross-examination was directed mainly to showing what the opinion of other medical authorities were as to the effect of the plaintiff's alleged injuries in causing the disease called diabetes mellitus."
The Supreme Court of Michigan held that "It is error to read medical authorities to a witness on cross-examination." Foley v. R. R.,157 Mich. 67.
And again: "The only circumstances under which medical books can be read in evidence are where the witness has based his opinion upon them and has referred to them as authority. The established rule is that it is incompetent to read from these books. This rule cannot be evaded on cross-examination." Hall v. Murdock, 114 Mich. 239.
In Union Pacific Railway Co. v. Yates, 79 Fed., 584, Thayer,Circuit Judge, says: "The authorities, both English and American, are practically unanimous in holding that medical books, even if they are (659) regarded as authoritative, cannot be read to the jury as independent evidence of the opinions and theories therein expressed or advocated."
Following this statement, Judge Thayer gives the grounds for the exclusion of such books as evidence, and in a long list of cases citesMelvin v. Easley, 46 N.C. 386.
In Chicago City Railway Co. v. Douglas. 104 Ill. App. 41, one of the expert witnesses for defendant, who had not referred to any medical books or author as authority for the opinion which he expressed, and who had not been asked about any such book or author, was asked on cross-examination the following questions:
Q. Did you ever read any books on medicine or surgery that give blows and injuries as a cause for cystic tumors? A. "Yes."
Q. There are a number of authors that give blows and injuries as the exciting cause of cystic tumors, are there not? A. "Yes."
Q. But you are not in accord with these authors? A. "No, sir."
In reversing the judgment for error in admitting this evidence, the Court says: "It would not have been competent for plaintiff's counsel to produce and read to the jury medical books; much less was it competent *Page 731 
to attempt to prove the contents of such books by witnesses testifying solely from memory."
"Medical works are not admissible in evidence, and, when not alluded to in direct examination, cannot be gotten before the jury, over objection, on cross-examination; nor can this be done by indirection in assuming their supposed teachings." S. v. Blackburn, 136 Iowa 747.
The opinion of an expert witness cannot be contradicted by showing on cross-examination what some author has said Mitchell v. Leech,69 S.C. 413; Knoll v. State, 55 Wis. 249.
"When an expert has given an opinion and cited a treatise as his authority, the book cited may be offered in evidence by the adverse party as impeaching testimony. But unless the book is referred to on cross-examination it cannot be used for this purpose. It would be a mere evasion of the general rule under discussion if counsel were allowed on cross-examination to read to the witness portions of such works, and to ask if he concurred in or differed from the opinion there expressed; hence this is not allowed." 3 Jones on Evidence (Blue Book), sec. 579.
Professor Wigmore says: "It has been in some courts held that counsel on cross-examination may, for discrediting purpose, read a professional treatise as opposing the statement of an expert on the stand, or ask whether a contradictory opinion has been laid down by others. But this is generally repudiated." Wigmore on Evidence, vol. 3, sec. 1700, citingButler v. R. R., 130 N.C. 15.
It will be observed that several of these authorities (Lynch v. Mfg.Co., Allen v. R. R., Chicago City Railway Co. v. Douglas, S. v.Blackburn) meet the position taken by the plaintiff, that although (660) the book may not be introduced in evidence, it is competent on cross-examination to ask for the opinions of experts as contained in books, for the purpose of testing the witness.
The law does not permit that to be done by indirection which cannot be done directly, and the fallacy in the position is in assuming that the unsworn declaration contained in a book is a test of the correctness of the opinion of a witness under oath.
This evidence elicited from the witness on cross-examination was very important on the issue of damages, as one of the controverted questions on this issue was whether locomotor ataxia could be caused by the injury received in the collision, and the plaintiff had the benefit of the opinions of Strumpell, Osler, and Forsheimer, when under the law he was not entitled to them.
The evidence was not restricted at the time of its introduction, nor in the charge, and if intended as a test of the knowledge of the expert, as now contended, it was before the jury as substantive evidence, and was of a character calculated to influence a finding upon perhaps the most *Page 732 
important element in the issue of damages, and that there was some controlling influence is apparent from the fact that the damages assessed at the last trial are about twice as large as the amount awarded upon the first trial.
There must, therefore, be a new trial; and as upon the trial of the issue of damages under the Employers' Liability Act the parties would have the right to introduce all of the evidence bearing on the issues of negligence and contributory negligence, it would serve no good purpose on this record to restrict the new trial to a single issue.
New trial.