STACY, C. J. concurring.
CLARKSON, J., dissenting.
CONNOR, J., concurs in dissenting opinion.
This was an action instituted by the plaintiff against the defendant to recover damages for personal injuries sustained 3 April, 1930, at a crossing in the town of Henderson. The defendant denied the allegations of negligence, pleaded contributory negligence and other defenses not pertinent to a decision of this case.
Issues of negligence, contributory negligence and damages were submitted to the jury and answered in favor of plaintiff. The verdict awarded $7,000 damages for personal injuries and $250 for property damage.
From judgment upon the verdict the defendant appealed.
The record shows the following: During the argument of one of the counsel for plaintiff to the jury, he made the following statement:
"The law in North Carolina says that all Mr. Conn had to do when he approached the track was to stop, if the circumstances were such that an ordinarily prudent man would stop, look and listen, and then go ahead as he did in this case." "The North Carolina Supreme Court in the case ofKimbrough v. R. R., 180 N.C. 274, and decided in the year 1920, turned the defendant's theory down flat. I want to read here what Judge Clark said about the law. Judge Clark was a great Chief Justice of the Supreme Court and one who upheld the liberties of the people."
Objection by defendant to plaintiff's attorney reading from the opinion of Judge Clark. The court then charged the jury: "The jury will take the law from the court and not from counsel."
Counsel for defendant: "We note an exception to the reading of the dissenting opinion of Judge Clark."
Objection by defendant; overruled; defendant excepts.
"Talking about going out upon the track, he said: `Gessler placed his hat upon a pole and compelled the public to pay obeisance to it. But neither of these are more repugnant to our sense of propriety and right *Page 159 
than to require the people traveling their own roads to come to a full stop at the sight of two parallel bars of iron laid across a public highway, simply because the railroads, while saving themselves the expense of avoiding grade crossings, are unwilling to take the trouble or responsibility to give proper signals or to establish gates and custodians whenever needed.'" This is Judge Clark's language on it. I don't care how much the attorney for the railroad objects to it. It is my opinion that the Supreme Court of North Carolina in the case of Moseley v. R. R.,197 N.C. 628, has backed Judge Clark up in his statement that it is not your duty to stretch your necks and bow to two iron rails. That is what you say the law is," etc.
The foregoing excerpt from the record presents for decision this question of law:
In arguing a case to the jury, is it permissible for an attorney to read to the jury a dissenting opinion of one of the Justices of the Supreme Court of North Carolina?
Doubtless, it should be observed at the outset that a general dissertation or essay upon dissenting opinions is not pertinent to a solution of the question of law involved in this appeal. Suffice it to say that such opinions constitute valuable and helpful interpretation of the law as expounded or present in clear relief the divergent paths of legalistic thought upon a given subject. Moreover, at times, they may serve to demonstrate that courts and judges do not always fall into the goose-step of outworn precedent.
Prior to 27 December, 1844, an attorney was not permitted to argue law to a jury. In S. v. Miller, 75 N.C. 73, Justice Reade said: "Some twenty-five years ago a circuit judge restrained a lawyer from arguing the law to the jury, suggesting that the argument of law ought to be addressed to the court, as the jury had to take the law from the court. Umbrage was taken at that, and the Legislature passed an act allowing counsel to argue both the law and the facts to the jury." The act referred to is chapter 13, Public Laws of 1844, and is now embodied in C. S., 203, which provides that "in jury trials the whole case as well of law as of fact may be argued to the jury." This declaration is broad and comprehensive and easily lent itself to a construction by the profession that the field of a jury argument was unlimited and boundless. Hence, in the course of time, it became necessary for courts to fence in the field by imposing certain restrictions upon counsel in presenting causes to the jury. These restrictions are reflected in certain legal inhibitions imposed by the courts. These inhibitions may be grouped and classified as follows:
1. Attorneys are not permitted, except in certain specific instances, to read medical books or writings of a scientific nature to the jury. *Page 160 Melvin v. Easley, 46 N.C. 386; Huffman v. Click, 77 N.C. 55; S. v.Rogers, 112 N.C. 874; Butler v. R. R., 130 N.C. 16; Lynch v. Mfg. Co.,167 N.C. 98; Tilghman v. R. R., 171 N.C. 652. Nor can counsel read a paper-writing not in evidence for the purpose of impeachment. S. v. Bryan,89 N.C. 531. The theory which excludes the reading of such publications, is based upon the idea that declarations in a book or opinions of experts contained therein, are not under oath, and hence cannot be classified as evidence. The exception to the general rule is pointed out in the Tilghmancase, supra, in these words: "When an expert has given an opinion and cited a treatise as his authority, the book cited may be offered in evidence by the adverse party as impeaching testimony. But unless the book is referred to on cross-examination it cannot be used for this purpose. It would be a mere evasion of the general rule under discussion if counsel were allowed on cross-examination to read to the witness portions of such works, and to ask if he concurred in or differed from the opinion there expressed; hence this is not allowed."
2. The second class of restrictions may be denominated as unfair comment and is discussed in many decisions, notably: Jenkins v. Ore Co.,65 N.C. 563; S. v. Williams, 65 N.C. 505, Coble v. Coble, 79 N.C. 589;S. v. Davenport, 156 N.C. 596; S. v. Tucker, 190 N.C. 708; Lambornv. Hollingsworth, 195 N.C. 350; S. v. Green, 197 N.C. 624; S. v. Beal,199 N.C. 278. These illustrations of unfair comment, beginning with the familiar "poor widow and rich corporation" argument, running through the "Pennsylvania Yankee" appeal, including the famous upas tree declaration and ending with the religious and social theories referred to in the Bealcase, all stand as a lasting monument to vituperative ingenuity. The climax of unfair comment in the literature of the law of this State was reached in the argument of counsel and the charge of the court in S. v. Brown,67 N.C. 435.
The third class of inhibitions denies to counsel the right to read the decisions of the Supreme Court of North Carolina where such reading would reasonably tend to prejudice either party upon the facts. S. v. Corpening,157 N.C. 621; Forbes v. Harrison, 181 N.C. 461; Elliott v. Power Co.,190 N.C. 62. Thus, in the Corpening case, the Court said: "As we understand the record, the counsel for the prosecution read the facts inMalonee's case, relied upon as supporting evidence to the prosecutrix, and over defendant's objection was allowed by the court to say in effect that a jury of Jackson County had convicted Malonee, and the supporting evidence was much stronger "than in Malonee's case," etc. A new trial was awarded because the trial judge permitted such argument to be made. In the Forbescase counsel attempted to read a portion of the opinion in Bell v.Harrison, 179 N.C. 190, and *Page 161 
upon objection by counsel for defendant the court declined to permit such reading, and this ruling was upheld. The Court observed "that two cases grew out of said administration and there was grave danger of prejudicing the defendants upon the facts as counsel was allowed to read the part of the opinion in the case proposed to be read by him."
4. The fourth class of restrictions denies to counsel the right to comment upon extraneous matters upon which there is no evidence. McLamb,Admr., v. R. R., 122 N.C. 862; Hopkins v. Hopkins, 132 N.C. 25; S. v.Love, 187 N.C. 32.
5. The fifth class of restrictions excludes personal experience of counsel as part of the argument. Perry v. R. R., 128 N.C. 471.
The courts of other jurisdictions have considered the question as to what may be read to a jury by counsel in the course of argument.
6. The Court of Appeals of New York granted a new trial in the case ofWilliams v. Brooklyn Elevated R. R. Co., 26 N.E. 1048, because counsel, in the course of the argument, was permitted, over objection, to read to the jury an article appearing in the New York Tribune, entitled "Only a Boy Peddler." The article purported to be an account of the death of a little boy who was selling collar buttons and combs to help support his mother and eight brothers and sisters, and his death was caused by contact with a live wire swinging from a pole. The Court said: "The reading by counsel in summing up to the jury of the newspaper article `Only a Boy Peddler' was wholly irrelevant to the case. It could have been read for no purpose except to inflame the jury against corporations, and to lead them, under the influence of a just anger excited by the incident narrated, to give liberal damages to the plaintiff in the case on trial. The refusal of the court to interfere, under the circumstances of this case, was legal error. The privilege of counsel, and the largest liberality in construing it, did not authorize such a totally irrelevant and prejudicial proceeding."
Again in People v. Fielding, 53 N.E. 497, the defendant was indicted for auditing a fraudulent claim against the city of Brooklyn. The District Attorney, in the course of his argument, referring to taxpayers, said: "I say you will see old men in that line clutching in their knotted fingers rolls of dirty one-dollar bills. Look at their worn and shabby garments. Look at the marks of painful labor written all over their aged and clumsy limbs. It is the money of these people which the defendant has stolen and squandered. These are the people whose cause I plead. These are the victims of the defendant's crime. These are the people who now, by tens of thousands, are waiting outside for your verdict. Will you do them justice, or will you not? If you shall let this man, loaded with his guilty plunder, escape, then I say you have committed the unpardonable sin." The court, in charging the jury, *Page 162 
said: "Some things have been said about the newspapers, about popular clamor, and about the burden of the taxpayers. Those are considerations which are not to control or influence you in deciding this case." The Court awarded a new trial, and in the course of the opinion it is said: "Even in a civil action, when counsel are permitted, under objection and exception, while summing up, to read to the jury an abstract from a pamphlet or newspaper, or to exhibit a cartoon, not in evidence, it is good ground for reversal. . . . So statements made by counsel, outside of the evidence, and subject to objection, which strongly tend to arouse sympathy, prejudice, or resentment in the minds of the jury, require a new trial, even if the court charges that they have nothing to do with the case, and must be disregarded." See, also, Scripps v. Reilly, 38 Mich. 10.
7. Eulogies of deceased in suit for wrongful death. Dixon v. Haynes,262 P. 119. The Court of Washington said: "The misconduct of counsel complained of consists of an attempt by one of the counsel for respondent to read something to the jury which had not been introduced in evidence, appearing to be a eulogy of deceased, or something of the kind. Upon objection, the court refused to allow counsel to read it, and counsel for respondent was peremptorily directed to refrain from making any reference to any document not in evidence. Although counsel for respondent should not have attempted to read anything to the jury which had not been introduced in evidence on the trial, the court fully protected the rights of appellants, so that no prejudicial error occurred."
8. Counsel are not permitted to read to the jury, as law, decisions which are inapplicable to the facts, or which do not declare the law as held by the jurisdiction in which the trial occurs. This principle was announced by the Supreme Court of South Carolina in Key v. Carolina N.W.Ry. Co., 147 S.E. 625. The Court said: "It appears from the record that the presiding judge permitted appellant's counsel to read the entire decision of the United States Supreme Court in the Goodman case to the jury in the trial of the case at bar, but that the court refused to charge the law of that case, and on motion for a new trial failed to grant the same because the jury had disregarded the principles announced in the Goodmancase . . . Lately, it has been cited often by counsel for railroad companies in this Court, and it has received considerable attention in dissenting opinions. A majority of the Court has never indorsed the views of that case. The only mistake made by the presiding judge in this connection was in permitting counsel for the appellant to read the decision in the Goodman case to the jury." Union Pac. R. R. Co. v. Field, 137 Fed., 14; Ray v. Chesapeake Ohio R. R. Co., 50 S.E. 413; Farnandis v.Great Northern R. R. Co., 84 P. 18. *Page 163 
This Court expresses no approval or disapproval of the various principles announced in other jurisdictions upon the subject, but such decisions are referred to in order to demonstrate the trend of judicial thinking. The range of a jury argument is carefully and correctly set forth by McIntosh North Carolina Practice and Procedure, sec. 569, et seq. Summarizing the principles of legitimate argument by counsel, the author says: "But he may refer to well-known facts in history, literature, and science by way of illustration and ornament. He may argue matters of common knowledge, or matters of which the court will take judicial notice, and within the limits of the evidence the manner of presenting the case is left to his own judgment. He may indulge in impassioned bursts of oratory, or what he may consider oratory, so long as he introduces no facts not disclosed by the evidence. It is not impassioned oratory which the law condemns and discredits in the advocate, but the introduction of facts not disclosed by the evidence. It has been held that he may even shed tears during his argument, the only limitation on this right being that they must not be indulged in to such excess as to impede or delay the business of the court."
Applying the principles deduced from the authorities, it is clear that a dissenting opinion is not admissible in evidence, and hence cannot be classified as a fact. Neither is it the law of the particular case, else it would not be a dissenting opinion. Manifestly, a dissenting opinion expresses the individual view of the judge who writes it, and thus would logically fall into the classification of newspaper editorials, magazine articles, pamphlets, or other writings, which have not received the judicial sanction of a court. Therefore, the Court concludes that it is not permissible, upon objection duly made and entered, for an attorney to read as the law of the case a dissenting opinion of one or more of the Justices of the Supreme Court.
A perusal of the record discloses, beyond a doubt, that the dissenting opinion in the Kimbrough case was read to the jury as a correct statement of the law. The trial judge, upon objection, made a general observation to the jury, but this was not sufficient. It was his duty, upon objection duly made, either to direct counsel to refrain from such reading or instruct the jury plainly and unequivocally that the dissenting opinion had no legal bearing upon the case.
New trial.