STATE OF NORTH CAROLINA v. JOHN EDWARD GARDNER

No. 528A85

(Filed 6 May 1986)

**Criminal Law § 102.6— request to read excerpt from opinion to jury—denied—no prejudicial error**

There was no prejudicial error in a prosecution for rape, first degree sexual offense, and robbery with a dangerous weapon where the trial court denied defendant's request to read to the jury during closing arguments an excerpt from a Court of Appeals opinion on the hazards of eyewitness identification. Although the whole case may be argued to the jury regardless of whether the trial court's instructions will also relate the law on the issue, the case from which defendant wished to read involved "unconscious transference," an issue which did not arise on the evidence at defendant's trial; the case on which defendant relied had been reversed by the Supreme Court at the time defendant attempted to use it in his closing argument; the excerpt quoted from a dissenting opinion in the District of Columbia Circuit, an article from the *Journal of Applied Psychology*, and a book entitled *Eyewitness Testimony* by a Stanford University professor, sources which could not properly be quoted directly; the excerpt was intended by the Court of Appeals to further explain the court's decision and does not constitute the rule of law in this jurisdiction; and there was no prejudice because defense counsel was allowed to use the argument found in the opinion and to refer to the opinion, the closing

arguments were not recorded, and the evidence against defendant was overwhelming. N.C.G.S. 84-14, N.C.G.S. 15A-1443(a).

Justice EXUM concurring.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from judgments entered by *Stephens, J.,* at the 7 May 1985 Criminal Session of WAKE County Superior Court. We allowed defendant's motion to bypass the Court of Appeals on the Class D felony on 12 September 1985.

Defendant was charged in separate indictments, proper in form, with first degree rape, first degree sexual offense (fellatio), first degree sexual offense (anal intercourse), and robbery with a dangerous weapon. He was convicted on all charges and sentenced to consecutive life terms for the rape and for one of the sexual offenses. He was further given a forty year sentence for robbery and a life sentence for the remaining sexual offense, both to run concurrently with the sentences imposed for the rape and for the first degree sexual offense.

In brief summary, the evidence produced at trial by the State tended to show that Candace Barnhill was attacked by a black male, whom she later identified as defendant, at approximately 10:25 a.m. on 8 October 1984 as she washed her clothes in the laundry room at Kings Village in Raleigh. Mrs. Barnhill testified that defendant knocked on the laundry room door and stated that he wanted to come in to buy a soda. Mrs. Barnhill recounted that after she had opened the door defendant placed a carton cutter with a small blade to her throat and demanded money. Defendant then pushed her into the laundry bathroom, raped her, and forced her to perform fellatio and to engage in anal intercourse. After the sexual assaults, defendant ordered Mrs. Barnhill to hand over her five rings, including her wedding ring. She complied.

Mrs. Barnhill identified defendant as her assailant in a photographic display, in a live line-up, and at trial. The State also offered the testimony of Joseph M. Ludas, latent print examiner with the City-County Bureau of Identification for Wake County, who stated that a latent fingerprint lifted from the doorknob to the laundry bathroom was made by defendant's left thumb. The State further produced evidence that on 9 October 1984 defendant pawned a wedding ring at Reliable Loan Company on Wilmington

Street and that on 12 October 1984 an employee of the Department of Correction bought three rings from defendant for thirty dollars. Mrs. Barnhill identified these rings as four of the five taken from her by defendant during the robbery and assault.

Defendant did not testify but called two witnesses to support his alibi defense. Ella Mae Duboise and Elizabeth Yates, neighbors of defendant residing at Halifax Court, both testified that they saw defendant at Halifax Court around 10:30 a.m. on 8 October 1984.

*Lacy H. Thornburg, Attorney General, by George W. Boylan, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Louis D. Bilionis, Assistant Appellate Defender, for defendant-appellant.*

BRANCH, Chief Justice.

The sole question presented for our review is whether the trial court committed reversible error by prohibiting defense counsel from reading to the jury an excerpt from a Court of Appeals' opinion during his closing argument. Defendant argues that the trial court's ruling was improper and prejudicial because it prevented him from presenting a complete defense. The burden of showing the trial court's error and its resulting prejudice is on defendant. N.C.G.S. § 15A-1443(a) (1983); *State v. Loren,* 302 N.C. 607, 613, 276 S.E. 2d 365, 369 (1981). We first deal with defendant's contention that the trial court's ruling constituted error.

According to defendant, Mrs. Barnhill's identification of him as her attacker was a central, but vulnerable, feature of the State's case. Defendant contends that her identification was subject to attack on the basis that her original height description of the assailant was 5'8", although defendant is approximately 6'0", and that she noticed no scars on her assailant even though defendant has visible scars above both eyes and in the middle of his forehead. Defendant highlighted these discrepancies between Mrs. Barnhill's identification and defendant's actual physical attributes to bolster his alibi defense.

To shake the jury's confidence in eyewitness identifications in general, defense counsel informed the trial court that during

his closing argument he planned to read the following excerpt from *State v. Smith*, 65 N.C. App. 684, 686-87, 309 S.E. 2d 695, 696-97 (1983), *rev'd*, 311 N.C. 287, 316 S.E. 2d 73 (1984):

> As many judges and psychologists have noted, "convictions based solely on 'one eyewitness' identifications represent 'conceivably the greatest single threat to the achievement of our ideal that no innocent man shall be punished.' " *United States v. Butler*, 636 F. 2d 727, 732 (D.C. Cir. 1980) (Bazelon, J. dissenting), *cert. denied*, 451 U.S. 1019, 69 L.Ed. 2d 392, 101 S.Ct. 3010 (1981). This, of course, is because the human mind often plays tricks on us. One of the tricks that it sometimes plays is that a person seen briefly before in one place and situation is thought, even by the keenest of us, to be another person, seen in a different context altogether. This common experience of mankind, known to social scientists as "unconscious transference," has been much discussed in their literature, and the likelihood of the experience being repeated under various circumstances has been confirmed by experiments of different kinds. For examples, *see Eyewitness Testimony*, by Stanford University Professor E. Loftus, Harvard University Press (1979), and *Effect of Choosing an Incorrect Photograph on a Later Identification by an Eyewitness*, by Gorenstein and Ellsworth, Journal of Applied Psychology, Volume 65, pp. 616-622 (1980).

The State objected to the use of this excerpt in defense counsel's closing argument on the basis that it did not constitute law but was instead merely one judge's commentary on the hazard of misidentification. The trial judge stated that his grounds for refusing to allow defense counsel to read this passage from the Court of Appeals' opinion was that the law as set forth in *Smith* was adequately covered in the pattern jury charge he intended to give dealing with the identification of a defendant by an eyewitness. Defense counsel then asked in the alternative that he be allowed to argue this passage as the law of North Carolina without actually reading the opinion to the jury. The trial court granted this request and even allowed counsel to refer to the text of the opinion during his argument as long as he did not quote the opinion.

In support of his contention that the trial court's refusal was reversible error, defendant relies first on N.C.G.S. § 84-14 for the

basic proposition that in all superior court jury trials "the whole case as well of law as of fact may be argued to the jury." This right arises regardless of whether the trial court's jury instructions will also relate the law on the issue. *State v. McMorris*, 290 N.C. 286, 225 S.E. 2d 553 (1976). Therefore, we are of the opinion that the trial court's reasoning for denying counsel's request was erroneous. However, we are not required on this basis alone to hold that the trial court's ruling was prejudicial error.

Defendant also relies on *State v. Noland*, 312 N.C. 1, 320 S.E. 2d 642 (1984), *cert. denied*, --- U.S. ---, 84 L.Ed. 2d 369 (1985), a case he believes to be indistinguishable. In *Noland*, the defendant raised an insanity defense to the murder charges against him and offered evidence that he suffered from amnesia concerning the events surrounding the shootings. The prosecutor in his closing argument paraphrased, without objection from the defendant, the following passage from *State v. Caddell*, 287 N.C. 266, 286, 215 S.E. 2d 348, 361 (1975):

> Amnesia is rare. More frequently the accused, remembering full well what he's done, alleges amnesia in false defense. He is a malingerer. . . Failure to remember later, when accused, is in itself no proof of the mental condition when the crime was performed.

*Noland*, 312 N.C. at 14, 320 S.E. 2d at 651. The defendant in *Noland* complained that the quoted material was irrelevant to the issues before the jury. This Court disagreed and held that because the issue of amnesia was raised by the evidence the State's argument, including the reading of this passage, did not constitute an impropriety so extreme as to require the trial judge to act *ex mero motu. Noland*, 312 N.C. at 15-16, 320 S.E. 2d at 651. Defendant argues that since it was not improper for the prosecutor in *Noland* to read the amnesia passage from *Caddell*, he should have likewise been allowed to read the "unconscious transference" passage from *Smith* in the present case. We disagree.

In the first place, *Noland* is distinguishable from the case before us in several crucial aspects. Although it is well settled that counsel may argue the law as well as the facts, he may not "read to the jury decisions discussing principles of law which are irrelevant to the case and have no application to the facts in evidence." *State v. Crisp*, 244 N.C. 407, 412-13, 94 S.E. 2d 401, 406

(1956). In *Noland*, the issue of amnesia had been raised by the defendant's evidence and was therefore relevant in the determination of his guilt. However, the principles contained in the excerpt selected by defense counsel in the case before us did not arise on the evidence produced at trial. There was no evidence that Candace Barnhill had ever seen defendant prior to the assault. Thus, there were no facts to support an inference that an "unconscious transference" had occurred. Because the victim in *Smith* claimed to have recognized the defendant during the robbery as a man he had previously seen several times in the neighborhood, the "unconscious transference" phenomenon was inferable from the facts and germane to the issue before the Court of Appeals at that time. It would have been equally impermissible for defense counsel in the present case only to have read to the jury the first line of the *Smith* passage which voices a concern for convictions based on one eyewitness's identification. Judge Phillips, writing for the *Smith* court, clearly intended this sentence to be read as a part of the "unconscious tranference" discussion in the paragraph. This sentence, taken out of context, would have conveyed an entirely different and incorrect meaning from that which was desired by the court.

Therefore, assuming *arguendo* that the *Smith* paragraph in question did represent the law of this jurisdiction, we hold that the trial court did not err by refusing to allow defense counsel to read it to the jury since the principles contained therein were irrelevant to the facts and the issues of this case.

A second important aspect which distinguishes *Noland* from the present case is that *Smith*, unlike *Caddell*, had been reversed by this Court at the time defense counsel attempted to use it in his closing argument. This factor alone raises the question of whether the Court of Appeals' *Smith* opinion could be quoted from on the N.C.G.S. § 84-14 basis that it reflected the law of this State.

Defendant argues that under *State v. Boyd*, 311 N.C. 408, 319 S.E. 2d 189 (1984), *cert. denied*, --- U.S. ---, 85 L.Ed. 2d 324 (1985), language used in an appellate opinion may be utilized in a closing argument even though the actual result in the case has been reversed on other grounds. Yet, both the Court of Appeals and the Supreme Court in their respective *Smith* opinions clearly

stated that only one issue was presented for their review. The sole contention on appeal to both Courts was whether the trial court incorrectly charged the jury regarding the State's identification testimony and incorrectly refused to give similar instructions requested by the defendant. With only one issue raised on appeal, the Supreme Court's reversal of the Court of Appeals' opinion could not have been on any other ground than that which was essential to the decision. Thus, any law which arose from the Court of Appeals' *Smith* opinion was clearly disavowed by the Supreme Court and any other language not essential to the Court of Appeals' holding was dicta, not "law," and outside the purview of N.C.G.S. § 84-14. We conclude therefore that the trial court did not err in prohibiting defense counsel from reading the passage in question to the jury because the Court of Appeals' *Smith* opinion at that time carried no legal precedential value as part of the body of the law of this State.

In order to resolve this issue completely, we feel some discussion is needed on the actual contents of the *Smith* excerpt. As intimated above, we believe there is some question as to whether the substance of the passage expressed North Carolina law.

N.C.G.S. § 84-14 grants counsel the right to argue the law to the jury which includes the authority to read and comment on reported cases and statutes. *State v. Irick*, 291 N.C. 480, 231 S.E. 2d 833 (1977). There are, however, limitations on what portions of these cases counsel may relate. For instance, counsel may only read statements of the law in the case which are relevant to the issues before the jury. In other words, "the whole *corpus juris* is not fair game." *State v. McMorris*, 290 N.C. 286, 287, 225 S.E. 2d 553, 554 (1976). Secondly, counsel may not read the facts contained in a published opinion together with the result to imply that the jury in his case should return a favorable verdict for his client. *Wilcox v. Motors Co.*, 269 N.C. 473, 153 S.E. 2d 76 (1967). Furthermore, counsel may not read from a dissenting opinion in a reported case. *See Conn v. R.R.*, 201 N.C. 157, 159 S.E. 331 (1931). Consequently, these limitations show that simply because a statement is made in a reported decision does not always give counsel the right to read it to the jury in his closing argument under N.C.G.S. § 84-14.

In reviewing the *Smith* passage in question, we note that Judge Phillips quoted from Judge Bazelon's dissenting opinion in *United States v. Butler*, 636 F. 2d 727, 732 (D.C. Cir. 1980), *cert. denied*, 451 U.S. 1019, 69 L.Ed. 2d 392 (1981), and relied on Professor E. Loftus's book entitled *Eyewitness Testimony* and on an article from the *Journal of Applied Psychology*. Even at first glance, counsel's attempt to read a portion of the *Smith* opinion containing excerpts from these sources is immediately troubling. We have previously related that counsel may not read from a dissenting opinion unless it has later been adopted as the law of this State. The simple rationale behind this rule is that it is not "the law of the particular case, else it would not be a dissenting opinion" and is therefore outside the scope of N.C.G.S. § 84-14. *Conn v. R.R.*, 201 N.C. at 163, 159 S.E. at 335. Furthermore, references from the Loftus book and the psychology magazine article run afoul of the rule prohibiting counsel from reading from "medical books or writings of a scientific nature to the jury. . . [except] '[w]hen an expert has given an opinion and cited a treatise as his authority.' " *Id.* at 159-160, 159 S.E. 2d at 333, *quoting Tilgham v. R.R.*, 171 N.C. 652, 659, 89 S.E. 71, 75 (1916). We believe it would be an improper interpretation of N.C.G.S. § 84-14 to allow counsel to avoid these rules on the basis that he read the material from an appellate reporter rather than from the magazine or book itself, especially in light of the fact that it was contained in an opinion that had been reversed by this Court.

We also find this passage objectionable as material to be read to the jury on the ground that it does not constitute the rule of law promulgated by the Court of Appeals in *Smith* nor was it intended to represent, based on the authorities cited, the law of this jurisdiction. This particular passage in *Smith*, instead, was intended to further explain the court's decision that the trial court erred in refusing defendant's request for a special instruction on the issue of identity. The mere presence of this excerpt in the published opinion, standing alone, is an insufficient justification for holding that the trial court in this case improperly prohibited counsel under N.C.G.S. § 84-14 from reading the excerpt to the jury.

Surely, we recognize the need of appellate court judges to rely on secondary authority in certain cases in order to determine the appropriate result. However, its use does not automatically give

counsel the right under N.C.G.S. § 84-14 to read that portion of the opinion which quotes or paraphrases that particular writing. For counsel's rights under N.C.G.S. § 84-14 to come into play, the excerpt to be read to the jury must reflect the law of that case or at least the law of this jurisdiction. This fact, however, does not prevent the trial court in its discretion from allowing counsel to conduct his closing argument in any manner which has not been expressly disapproved of by this Court in prior decisions. We have merely addressed in this case situations in which the trial court has no discretion under N.C.G.S. § 84-14 to prohibit counsel from arguing the law in his closing statement by reading a portion of a published opinion to the jury. We hold that because the excerpt was not a statement of North Carolina law defense counsel had no right under N.C.G.S. § 84-14 to read it to the jury during his closing argument. Therefore, the trial court did not err or abuse its discretion in prohibiting counsel from reading to the jury a paragraph from an appellate opinion which contained statements from a dissenting opinion and from other writings not admitted into evidence at trial.

Finally, even if we could agree that the trial court's ruling was in error, defendant must nevertheless show that this error was prejudicial. Under N.C.G.S. § 15A-1443(a) the test for prejudicial error in matters not affecting constitutional rights is whether "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." Assuming for the sake of argument that error occurred, we hold that defendant has failed to show that he was prejudiced. *See generally, State v. Milby,* 302 N.C. 137, 273 S.E. 2d 716 (1981).

In the first place, although the trial judge refused to allow defense counsel to actually read from the Court of Appeals' reporter containing *Smith,* he did grant counsel permission to make the same argument found in the *Smith* decision and to use the opinion as a reference during his closing argument. Also, because the closing arguments of counsel were not transcribed nor made a part of the record, we are unable to determine how heavily defense counsel relied on the concerns dealt with in the pertinent *Smith* passage and unable to review how the trial court's ruling actually restricted defense counsel's argument to the jury. Thus,

defendant cannot demonstrate how the trial court's ruling was prejudicial.

More importantly, however, in view of the overwhelming evidence presented by the State, as well as the quality of that evidence, we hold that there is no reasonable possibility that the trial court's ruling preventing defense counsel from citing and quoting from the Court of Appeals' *Smith* decision affected the verdicts returned by the jury. The victim, State's witness Candace Barnhill, clearly identified defendant as the perpetrator of the crimes against her in two different identification procedures prior to trial and identified him again unequivocally at trial. The State also offered evidence that defendant's thumbprint was found on the doorknob of the laundry bathroom where the robbery, rape, and other sexual offenses occurred. Defendant was later found shortly after the incident selling four of the five rings taken from the victim during the robbery. In the face of this evidence, defendant has failed to show prejudicial error.

For reasons stated, defendant received a fair trial free of prejudicial error.

No error.


Justice EXUM concurring.

For *all* the reasons given in the majority opinion taken together, the trial court did not abuse its discretion when it precluded defense counsel from reading the passage from *State v. Smith*, 65 N.C. App. 684, 686-87, 309 S.E. 2d 695, 696-97 (1983), *rev'd*, 311 N.C. 287, 316 S.E. 2d 73 (1985). I would not hold (and it is not clear to me that the majority *does* hold) that any one of the reasons given, standing alone, would have been enough to sustain the action of the trial court. On this basis I concur in the result reached by the majority.