An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1207

NORTH CAROLINA COURT OF APPEALS

Filed:  19 August 2014

STATE OF NORTH CAROLINA

v.

Clay County
Nos. 10 CRS 188, 190

RUSSELL EDWARD MURRAY


Appeal by defendant from judgment entered 28 February 2013 by Judge James U. Downs in Clay County Superior Court.  Heard in the Court of Appeals 18 February 2014.


*Attorney General Roy Cooper, by Special Deputy Attorney General Lauren M. Clemmons, for the State.*

*Law Office of Glenn Gerding, by Glenn Gerding, for Defendant.*


ERVIN, Judge.


Defendant Russell Edward Murray appeals from a judgment entered based upon his convictions for first degree sexual offense and taking indecent liberties with a child.  On appeal, Defendant contends that the trial court committed plain or prejudicial error by allowing the State to elicit evidence on cross-examination concerning the presence of a hidden camera system, a videotape depicting a "young man" masturbating, and

drug paraphernalia and marijuana in his residence at the time that it was searched by investigating officers. After careful consideration of Defendant's challenges to the trial court's judgment in light of the record and the applicable law, we conclude that the trial court's judgment should remain undisturbed.

## I. Factual Background

### A. Substantive Facts

#### 1. State's Evidence

T.M.'s mother and Defendant's brother married when Todd was five or six years old.[1] Defendant's brother raised Todd and "was a father" to him. Moreover, Defendant's parents were "the only grandparents [that Todd] knew."

During part of the time that Todd's mother and Defendant's brother were married, Todd lived next door to Defendant and saw Defendant more than once a week at the family home. In addition, Todd began visiting Defendant at his home when Todd reached eight or nine years of age. Todd looked up to Defendant because he "never really had a father" and because Defendant was a law enforcement officer.

---

[1]T.M. , who was a minor at the time of the events in question, will be referred to as Todd, a pseudonym used throughout the remainder of this opinion for ease of reading and to protect T.M.'s privacy.

In the interval between June 2001 and August 2002, when Todd was ten years old, Todd stayed overnight with Defendant at his residence for the first time. The weather was warm outside. On that occasion, Defendant showed Todd a pair of night vision goggles that exhibited a red light. As he was going to sleep on the couch that evening, Todd saw the red light shining from Defendant's bedroom and waved.

After Todd went to sleep, he woke up to discover that Defendant was rubbing his stomach with his hand. As a result of the fact that Defendant's conduct startled him, Todd slapped Defendant's hand away. After saying, "okay, goodnight," Defendant left.

During the same year, Todd had another overnight visit with Defendant at Defendant's residence. On that occasion, Defendant and Todd went to Walmart, where they purchased an off-road racing computer game. Upon returning to Defendant's residence, the two of them played the game together while sitting on the couch. After several hours had passed, Defendant suggested that Todd call his mother and seek permission to stay at Defendant's residence that night. After Todd successfully obtained permission to spend the night at Defendant's residence, the two of them got ready for bed. At Defendant's suggestion, Todd

slept in the bed with Defendant. Todd wore pants and a shirt to bed.

At some point during the night, Todd woke up, discovered that his pants had been lowered to knee level, and realized that Defendant was performing oral sex on him and rubbing the inside of his leg with his hand. After Todd had awakened, Defendant rolled over on his back and attempted to pull Todd on top of him. Todd pushed Defendant away rather than acquiescing in this conduct. Todd never pulled his pants back up because he was afraid of moving and stared at the ceiling for the remainder of the night because he could not go back to sleep. The following day, Defendant took Todd home.

In the immediate aftermath of these episodes, Todd was too scared to tell his mother. Todd did not tell anyone about Defendant's conduct even after his initial fear wore off because he did not think that anyone would believe him given Defendant's employment with the Clay County Sheriff's Office. After he reached 16 or 17 years of age, Todd told his girlfriend what Defendant had done. However, Todd still did not make an official report of Defendant's activities because he did not want to tear "what little bit of family [he] had apart." In fact, Todd occasionally visited Defendant's home in order to use

Defendant's internet connection for the purpose of furthering his interest and involvement in motorcycle racing.

After Todd reached the age of 18, he went to Defendant's residence to use the computer. As he checked his e-mail, Todd felt an itch in his groin and scratched it. At that point, Defendant, who was standing behind Todd, began rubbing his shoulders and told Todd that, "[i]f [he] need[ed] any help with that [he could] come back here in the bedroom," a statement that Todd understood as a suggestion that the two of them have sexual contact. In view of the fact that he felt sickened by this statement, Todd left Defendant's residence. At the time of Todd's departure, Defendant was lying down in the bedroom. The conduct in which Defendant engaged on this occasion rekindled memories of Defendant's earlier actions, which Todd realized had occurred when he was between 10 and 12 years old.

After leaving Defendant's residence, Todd went to his mother's place of employment and asked her to come outside and speak with him. During their conversation, Todd told his mother about the comments that Defendant had made earlier that day and that Defendant had previously performed oral sex on him.

On the same date, Jim Carter, Todd's mother's boss, spoke with Todd. According to Mr. Carter, Todd was hyperventilating and looked extremely upset at the time of their conversation.

During their conversation, Todd told Mr. Carter that Defendant had performed oral sex on him on an occasion when Todd had spent the night at Defendant's house. As a result of this discussion, Mr. Carter was under the impression that the incident that Todd had described had occurred when Todd was a child.

Four or five days later, Todd spoke with law enforcement officers in Towns County, Georgia, whom he contacted because he felt that his assertions about Defendant's conduct would be "swept under the rug" by the Clay County Sheriff's Office given that Defendant's brother was employed by that agency at the time. The Georgia authorities referred Todd to the State Bureau of Investigation, at which point Special Agent Grayson Edwards was assigned responsibility for investigating Todd's allegations.

After speaking with Special Agent Edwards, Todd participated in and recorded two conversations with Defendant. The first of these two conversations occurred over the telephone and began when Todd called Defendant and attempted to talk to him. Defendant, however, stated that he was sick, said that he did not want to talk over the phone, and suggested that Todd visit his residence when Defendant felt better.

The second conversation between the two men occurred in-person at Defendant's residence. While he talked to Defendant,

Todd falsely claimed that his biological father had died in an attempt to arouse Defendant's sympathies. During their conversation, Todd confronted Defendant about Defendant having "suck[ed his] penis." In response, Defendant stated that he was sorry and had changed and asked Todd to forgive him. In addition, Defendant said that he understood why Todd was upset because the same thing had happened to him when he was younger. Defendant did not, however, appear to be upset or angry during their conversation.

On 2 September 2009, investigating officers executed a warrant authorizing a search of Defendant's home. During the search, the investigating officers found a hidden camera in Defendant's office and seized a videotape from the dresser drawer in Defendant's bedroom depicting a young man masturbating. In addition, Defendant gave investigating officers a marijuana pipe and an eighth of an ounce of marijuana that were located in his bedroom and admitted that it was illegal for him to possess these items.

## 2. Defendant's Evidence

In the summer of 2004, when Todd was 12 or 13 years old, he stayed overnight at Defendant's residence for the first time. As a result of the fact that he was working two full-time law enforcement jobs from 2001 to 2003, Defendant would not have

assumed the responsibility of having children stay with him overnight during that time.

At the time of his first overnight visit, Todd slept on the couch while Defendant slept in his bedroom. Defendant did not own any night vision goggles at the time of Todd's first overnight visit. During the night, Todd began thrashing around and hollering, so Defendant shook him in an attempt to get him to wake up. After waking up and rolling over, Todd went back to sleep.

Later that year, Todd spent a second night at Defendant's house. After Defendant purchased an off-road racing video game for Todd at Walmart, the two of them played the game together for twenty to thirty minutes before Defendant asked Todd to play by himself. As he continued to play the video game, Todd started to fall asleep on the couch. In view of the fact that it was winter, Defendant was concerned that Todd would be cold if he slept on the couch. Given that there was a plug-in electric heater in the bedroom, Defendant told Todd to sleep with Defendant there. Todd thrashed about throughout the night and kept Defendant awake. After taking Todd on a motorcycle ride the following day, Defendant took Todd home. Todd spent another night at Defendant's house during the following spring or summer.

At the time that Todd stopped by to use his computer, Defendant was in his bedroom since, as the result of a diminution in his income, the only furniture contained in his residence was located in his bedroom and office. After Todd had been using the computer for ten or fifteen minutes, Defendant decided to talk with him. As he entered the office, Defendant grabbed the back of the high-backed chair in which Todd was sitting, looked down, and saw that Todd was viewing pornographic images on the computer screen and masturbating. Upon making that observation, Defendant said, "damn, son, the least you could do is learn how to close the door," and returned to his bedroom. Shortly thereafter, Todd left Defendant's residence.

As a result of the fact that he was sick, Defendant barely remembered his recorded conversations with Todd. A few days before these conversations occurred, Defendant began suffering from an inner ear infection, a sinus infection, a throat infection, and a fever; remained sick for eight to ten days; and did not fully recover for several additional weeks. As a result, Defendant did not answer the phone until Todd had called him three or four times and believed that the conversation that they had on that occasion related to the encounter that had occurred while Todd was using Defendant's computer.

At the time of the second recorded conversation, Todd came to Defendant's residence while on a set of metal crutches. Although Todd claimed to have been injured in a motorcycle accident, Defendant doubted the veracity of Todd's claim given that he moved his feet around and, at one point, crossed his legs. In addition, Defendant noted that Todd would not make eye contact with him and was fidgeting. Finally, Todd told Defendant that his biological father had died, an assertion that Defendant knew to be untrue. As a result, Defendant believed Todd was under the influence of drugs at the time of the second recorded conversation.

In attempting to explain certain of the statements that he had made during the second recorded conversation, Defendant asserted that he had not actually been asking for forgiveness or admitting that Todd's claims were true. Instead, Defendant claimed that he was using a recognized law enforcement interviewing technique in which the officer attempted to keep the individual with whom he or she was dealing calm in an effort to prevent a problematic situation from escalating. Defendant denied having ever put his mouth on Todd's penis or having touched Todd in any way for the purposes of obtaining sexual gratification.

## B. Procedural History

On 13 September 2010, the Clay County grand jury returned bills of indictment charging Defendant with two counts of taking indecent liberties with a child and one count of first degree sexual offense.  On 23 January 2013, the State filed a notice alleging that it would attempt to establish as an aggravating factor that Defendant had taken "advantage of a position of trust or confidence" at the time that he committed the offenses with which he had been charged.

The charges against Defendant came on for trial before the trial court and a jury at the 25 February 2013 criminal session of the Clay County Superior Court.  On 27 February 2013, the jury returned verdicts convicting Defendant of first degree sexual offense and one count of taking indecent liberties with a child and acquitting Defendant of the second count of taking indecent liberties with a child.  On the following day, the jury returned a verdict finding that Defendant had taken advantage of a position of trust or confidence at the time that he committed the offenses that he had been convicted of committing.

At the conclusion of the ensuing sentencing hearing, the trial court found that the aggravating factor that the jury had determined to exist outweighed any mitigating factors and that Defendant should be sentenced in the aggravated range.  In light of this determination, the trial court consolidated Defendant's

convictions for judgment and sentenced him to a term of 260 to 321 months imprisonment. Defendant noted an appeal to this Court from the trial court's judgment.

## II. Substantive Legal Analysis

## A. Video Camera and Videotape

In his first challenge to the trial court's judgment, Defendant contends that the trial court committed plain error by allowing the prosecutor to question him about the fact that a video camera and a videotape labelled "About a Boy" that depicted a man masturbating had been discovered in his residence. According to Defendant, the evidence in question was irrelevant, constituted inadmissible character evidence, and possessed an unfairly prejudicial effect that substantially outweighed its probative value. Defendant is not entitled to relief from the trial court's judgment on the basis of this contention.

## 1. Standard of Review

As Defendant candidly acknowledges, he did not object to the admission of the evidence to which this argument is directed at trial. For that reason, his challenge to the trial court's decision to allow the admission of the evidence in question is only reviewable for plain error. *State v. Moore*, 366 N.C. 100, 105-06, 726 S.E.2d 168, 173 (2012).

> "[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' or where the error is such as to 'seriously affect the fairness, integrity or public reputation of judicial proceedings' or where it can be fairly said 'the instructional mistake has a probable impact on the jury's finding that the defendant was guilty.'"

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (alterations and omissions in original) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 103 S. Ct. 381, 74 L. Ed. 2d 513 (1982)). We will now review Defendant's challenge to the admission of the evidence that a video camera and a videotape depicting a young man masturbating was found in his residence at the time that it was searched by investigating officers utilizing the plain error standard of review.

## 2. Plain Error

In his brief, Defendant argues that the trial court committed plain error by allowing the admission of the challenged evidence on the grounds that it was irrelevant, that it constituted inadmissible "other bad act" evidence that had no

relevance to any issue other than Defendant's character, and that the danger of unfair prejudice resulting from the admission of the challenged evidence substantially outweighed any probative value that the challenged evidence might have possessed. The State, on the other hand, argues that the challenged evidence was admissible for the purpose of attacking the credibility of Defendant's testimony on the theory that, in the event that Defendant's account of what had happened on the date that Todd reported Defendant's alleged conduct to his mother and Mr. Carter were true, there should have been a videotape of Todd's conduct in Defendant's possession. However, we need not resolve the issue of whether the trial court erred by admitting the challenged evidence given our conclusion that we are unable to say that it is reasonably probable that the outcome at Defendant's trial would have been different had the trial court, acting on its own motion, precluded the State from presenting the challenged evidence before the jury.

Admittedly, Defendant took the stand, denied the accusations that Todd had made against him, and presented evidence that he was a peaceful and honest individual. On the other hand, Todd's testimony was detailed and generally consistent with the testimony of the other witnesses. In addition, his strong emotional reaction at the time that he

disclosed his accusations against Defendant to his mother and Mr. Carter would likely have been understood by the jury as supportive of his credibility. The record does not appear to contain any evidence tending to explain why Todd would make a false accusation against Defendant. Most importantly, however, Defendant made a number of statements during his recorded conversations with Todd that were tantamount to an admission that Todd's accusations were true. As a result, we do not believe that any error committed by the trial court in allowing the admission of evidence that a video camera and a videotape depicting a young man masturbating were found in Defendant's residence when it was searched by investigating officers rose to the level of plain error.

The conclusion that we reach with respect to this issue is consistent with the decisions that have been reached in other reported opinions of this court addressing similar factual situations. As far as we have been able to ascertain from an examination of the authorities cited in the parties' briefs and discovered in our own research, this Court has never found that the admission of evidence tending to show that a defendant possessed pornography, hidden camera equipment, or similar items constituted plain error.[2] On the other hand, this Court has held

_____

[2]Although the admission of evidence that the defendant

that the admission of similar evidence did not rise to the level of plain error in *State v. Delsanto*, 172 N.C. App. 42, 52-53, 615 S.E.2d 870, 876-77 (2005) (holding that the erroneous admission of evidence "that defendant possessed pornographic magazines and women's underwear" did not "amount[] to plain error" given the absence of any "indication that the error had any impact on the jury's finding of guilt"), and *State v. Doisey*, 138 N.C. App. 620, 625-27, 532 S.E.2d 240, 244-45 (holding that the erroneous admission of evidence that the defendant had positioned a video camera in the family bathroom and had made videotapes of family members, including himself, in that room did not constitute plain error given that the alleged victim testified concerning the abuse that she claimed to have suffered at the defendant's hands and made corroborative statements to her mother and another individual), *disc. review denied*, 352 N.C. 678, 545 S.E.2d 434 (2000), *cert. denied*, 531 U.S. 1177, 121 S. Ct. 1153, 148 L. Ed. 2d 1015 (2001). In addition, we held in *State v. Smith*, 152 N.C. App. 514, 519-24, 568 S.E.2d 289, 293-95, *disc. review denied*, 356 N.C. 623, 575

---

possessed pornographic videotapes was held to constitute prejudicial error in *State v. Bush*, 164 N.C. App. 254, 261-64, 595 S.E.2d 715, 719-21 (2004), given that "[t]he jury specifically requested that [the boxes containing the videos] be sent into the jury room," we do not believe that *Bush* has any bearing on the proper resolution of this case given the differences between prejudicial and plain error.

S.E.2d 757 (2002), that the erroneous admission of evidence that the defendant possessed pornographic magazines and videos did "not [even] rise to the level of prejudicial error" given that the State presented the alleged victim's testimony concerning the acts that the defendant committed against her, the testimony of the alleged victim's mother to the effect that something untoward had occurred on the date of the alleged abuse, the testimony of an expert witness to the effect that the victim suffered from post-traumatic stress disorder after the date upon which the defendant allegedly abused her, and the testimony of two co-workers to the effect that the defendant had made sexually suggestive comments about the alleged victim. As a result, given our determination that Defendant has not established that there is a reasonable probability that the outcome at his trial would have been different in the event that the challenged evidence had not been admitted and the consistency of that determination with our prior decisions concerning similar issues, we hold that Defendant is not entitled to relief from the trial court's judgment on the basis of the admission of evidence concerning the camera and videotape found in his residence when it was searched by investigating officers.

## B. Drug Paraphernalia and Marijuana

Secondly, Defendant contends that the trial court erred by allowing the admission of evidence that a marijuana pipe and eight ounces of marijuana were present in Defendant's residence at the time that it was searched by investigating officers. According to Defendant, his objection to the challenged evidence should have been sustained on the grounds that it was irrelevant, represented inadmissible "other bad act" evidence, and constituted impermissible cross-examination concerning specific instances of misconduct. We do not believe that Defendant is entitled to relief from the trial court's judgment on the basis of this argument.

In their briefs, the parties have engaged in a thorough discussion of the admissibility of the challenged evidence, with Defendant contending that the evidence in question was irrelevant, constituted inadmissible bad character evidence, and had no bearing on the credibility of his claim of innocence while the State contends that the evidence in question was admissible to rebut what it claims was Defendant's attempt to establish that he was a law abiding person. Assuming, without in any way deciding, that the trial court erred by overruling Defendant's objection to the admission of the challenged evidence, we are not persuaded that Defendant has shown that there is a "reasonable possibility that, had the error in

question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a).

In attempting to establish that the admission of the challenged evidence was prejudicial, Defendant directs our attention to a number of decisions in which we have held the admission of similar evidence to constitute prejudicial error. For example, in *State v. Wilson*, we granted the defendant a new trial on the basis of the trial court's decision to allow the prosecutor to "question[] defendant about her prior use of cocaine and marijuana," stating that "it is difficult to hold such an admission harmless" "[w]hen a case turns on the credibility of the witnesses," and noting that "the State's case consisted primarily of the testimony of young children" who "testified to events occurring approximately three years before trial when they were only three or four years old" coupled with the "corroborating testimony from their parents" and "scant physical evidence." 118 N.C. App. 616, 619-21, 456 S.E.2d 870, 872-74 (1995) (citing *State v. Rowland*, 89 N.C. App. 372, 383, 366 S.E.2d 550, 556, *disc. review improvidently granted*, 322 N.C. 619, 374 S.E.2d 116 (1988)). Similarly, in *Rowland*, we granted the defendant a new trial based upon the trial court's decision to allow the prosecutor to question the defendant about

the extent to which he had a "drug problem" and had received treatment for his "addiction" given that "[t]he State's case would stand or fall" based on the credibility of the prosecuting witness' uncorroborated testimony, which the defendant disputed when he took the stand. 89 N.C. App. at 380-84, 366 S.E.2d 555-56. On the other hand, the Supreme Court has held the admission of evidence that the defendant "enjoyed" smoking marijuana to constitute harmless error given that "[o]verwhelming evidence of defendant's guilt was presented by the [S]tate and buttressed by defendant's own testimony." *State v. Clark*, 324 N.C. 146, 167-68, 377 S.E.2d 54, 67 (1989) (citing *State v. Gardner*, 316 N.C. 605, 614, 342 S.E.2d 872, 878 (1986)). Thus, our prejudice determination must rest, ultimately, upon an analysis of the relative strength of the evidentiary showings by the State and Defendant at trial.

Although we acknowledge that the issue is a relatively close one, we are simply not persuaded that any error committed by the trial court in overruling Defendant's objection to the testimony concerning his possession of a marijuana pipe and a small amount of marijuana was a prejudicial one. Unlike the cases upon which Defendant relies in support of his attempt to establish prejudice, this case was not a simple swearing match between Todd and Defendant. Instead, Defendant made a number of

significant admissions during a recorded conversation between himself and Todd that was conducted at the request of investigating officers. Moreover, Todd's emotional state at the time that he accused Defendant of sexually abusing him in conversations with his mother and with Mr. Clark provides additional support for the veracity of his accusations. In addition, the alleged victim in this case, unlike the alleged victims in *Wilson*, was not testifying to something that had allegedly occurred when he was little more than an infant. Finally, we are not persuaded that evidence that a former law enforcement officer possessed a marijuana pipe and a small amount of marijuana had the same adverse impact upon Defendant's chances for a more favorable outcome at trial that resulted from the admission of evidence of cocaine and marijuana use at issue in *Wilson* and the cocaine addiction at issue in *Rowland*. As a result, for all of these reasons, we conclude that Defendant has failed to establish that there is a "reasonable possibility" that the outcome at his trial would have been different in the event that the trial court had sustained his objection to the admission of evidence that he had a marijuana pipe and a small amount of marijuana in his residence at the time that it was searched by investigating officers.

## III. Conclusion

Thus, for the reasons set forth above, we conclude that neither of Defendant's challenges to the trial court's judgment have merit.  As a result, the trial court's judgment should, and hereby does, remain undisturbed.

NO PREJUDICIAL ERROR.

Judges McGEE and STEELMAN concur.

Report per Rule 30(e).