IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-277

Filed 4 February 2026

McDowell County, Nos. 18CR050817-580, 18CR050818-580

STATE OF NORTH CAROLINA

v.

JOANNA KAYE JULIUS

Appeal by defendant from judgment entered 28 March 2024 by Judge J. Thomas Davis in McDowell County Superior Court. Heard in the Court of Appeals 18 November 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General, Kristin Cook McCrary, for the State.*

*Office of the Appellate Defender, by Glenn Gerding, and Assistant Appellate Defender John F. Carella, for the defendant-appellant.*

DILLON, Chief Judge.

Defendant Joanna Kaye Julius was convicted of various drug crimes based on drugs found during a warrantless search of her parents' vehicle. This is the second appeal in this matter.

In the first appeal, our Supreme Court held the warrantless search violated the Fourth Amendment of the Constitution of the United States. *State v. Julius*, 385 N.C. 331 (2023). In its decision, the Court did not opine whether probable cause existed to justify the search; rather, the Court–assuming probable cause did exist–

concluded the search was not subject to any warrant requirement exceptions. *Id.* at 340. The Court remanded the matter with instructions for the trial court to determine "whether the exclusionary rule is the proper remedy" for the Fourth Amendment violation. *Id.* at 341.

On remand, the trial court determined probable cause existed and that the "good faith" exception to the warrant requirement applied such that the evidence discovered during the search was not subject to the exclusionary rule.

Defendant brings this second appeal, challenging the trial court's order denying her motion to suppress. We affirm.[1]

## I. Background

The unchallenged findings made by the trial court in denying Defendant's motion to suppress tend to show as follows:

On 20 May 2018, a trooper and deputy were dispatched to investigate a single vehicle wreck in McDowell County. When the officers arrived, they found a vehicle wrecked in a drainage ditch. The wreck caused damage to certain landscape as well as to other property near the crash site. Defendant had been a passenger in the vehicle. A man had been driving the vehicle, but he fled from the scene on foot before the responding officers arrived.

---

[1] Though this opinion is published, the concurring judge disagrees on much of the analysis. Accordingly, this lead opinion's binding effect shall not extend behind the holding and any part of the concurring opinion in agreement with this lead opinion.

2

Defendant told the responding officers that the vehicle belonged to her parents, that a man named Kyle had been driving the vehicle, that she did not know Kyle's last name, and she did not know whether Kyle had left any identification in the vehicle before fleeing on foot.

Other witnesses on the scene told the officers Kyle indicated that he needed to flee because he had outstanding warrants.

Based on the location of the vehicle being in a drainage ditch, partially submerged in water, the vehicle could not be driven out of the ditch. Rather, the vehicle ultimately had to be towed out of the ditch.

In any event, the trooper searched the vehicle without first obtaining a warrant for the purpose of locating Kyle's identification. During the search, the trooper found illegal drugs and drug paraphernalia. Defendant was arrested. During a search of Defendant's backpack incident to her arrest, the trooper found more drugs, drug paraphernalia, and a large amount of cash. The trooper searched the vehicle without a warrant, discovering illegal drugs and drug paraphernalia inside the vehicle.

## II. Analysis

Defendant was convicted of various drug crimes based on the items found during the search of the crashed vehicle. In the first appeal, our Supreme Court determined no exception–including the automobile exception –applied to the warrant requirement and that, therefore, the search violated the Fourth Amendment. For the reasoning below, we affirm the trial court's determination on remand that the

exclusionary rule does not apply in this case, as the trooper had probable cause and acted in good faith in determining he did not need a warrant under the automobile exception. *See id.* at 339 ("Under the automobile exception, law enforcement may search a vehicle without a warrant '[w]hen the [ ] justifications for the automobile exception come into play' and law enforcement has 'probable cause to do so' " (citation omitted).).

In this present appeal, Defendant argues the trooper did not have probable cause to conduct the search of the vehicle and, alternatively, even if the trooper had probable cause, the trial court erred in concluding the "good faith" exception to the warrant requirement applied. These arguments are addressed each in turn.

### A. Probable Cause

The trial court determined the trooper had probable cause to search the vehicle for "Kyle's" identification. Indeed, if no probable cause existed to search the vehicle, then it would not matter whether the trooper acted in good faith in determining the automobile exception to the warrant requirement applied.

Here, the trooper came upon a crash scene where bystanders indicated the driver had fled the scene, the driver's name was "Kyle," and that Kyle fled the scene because he had outstanding arrest warrants (for unknown charges). There was also evidence that Kyle may have committed a traffic crime. The trooper needed to determine the identification of Kyle and determined he had probable cause to search the vehicle Kyle had been driving for anything which would identify Kyle.

4

Our Supreme Court has instructed "probable cause" requires only a "practical, nontechnical probability" and "does not demand any showing that such belief be correct or more likely true than false." *State v. Zuniga*, 312 N.C. 251, 260–62 (1984).

Here, based on the facts as known to the trooper at the time he came upon the crash scene, we agree with the trial court that the trooper had probable cause to search the vehicle for something which would further identify the driver who had crashed the vehicle, who had outstanding arrest warrants, and who was at large. The trooper's discovery of illegal drugs and drug paraphernalia gave the trooper additional probable cause to arrest Defendant and conduct further searches.

## B. "Good faith" Exception

Having determined the trooper had probable cause to conduct his search, the next issue to consider is that raised by Defendant's second argument, whether the trooper acted in good faith in determining he could conduct his search of the vehicle without first obtaining a warrant. Specific to the analysis, as our Supreme Court noted in its opinion during the prior appeal, the United States Supreme Court has determined an "automobile exception" exists to the warrant requirement, justifying a warrantless search of an automobile, in some situations. *Collins v. Virginia*, 584 U.S. 586 (2018).

In the first appeal of this matter, our Supreme Court reasoned that because the vehicle was "immobile"–that is, incapable of being driven out of the ditch–the automobile exception to the warrant requirement did not apply:

> In the present case, the testimony of the State's witnesses established that defendant's vehicle was immobile at the time of the search due to the accident, wholly negating the mobility requirement underlying the automobile exception. The vehicle was "down in a ditch" and partially submerged in water, and both Trooper Sanders and Deputy Hicks testified that the vehicle could not have been driven from the scene. In fact, Deputy Hicks testified that he called a tow truck to remove the vehicle from the ditch. Thus, *because the record demonstrates that the vehicle was immobile, an exigency did not exist, and the automobile exception does not apply.*

*Julius*, 385 N.C. 339–40 (emphasis added). Again, for purposes of this appeal, we are bound by this holding. The only issue remaining for us to determine is whether the trial court correctly concluded the "good faith" exception applied such that the exclusionary rule does not apply.

The exclusionary rule is a judicially created remedy designed to deter unlawful police conduct. *United States v. Leon*, 468 U.S. 897, 916 (1984). However, exclusion is not required where suppression would have "no deterrent effect." *Herring v. United States*, 555 U.S. 135, 141 n.4 (2009). Accordingly, the United States Supreme Court has created a "good faith" exception, whereby the exclusionary rule does not apply in cases where an officer has an objectively reasonable belief that he is acting within the bounds of the law. For instance, in 2011, the Court held that the "good faith" exception applies when officers act "in objectively reasonable reliance on binding precedent." *Davis v. United States*, 564 U.S. 229, 241 (2011).

Prior to our Supreme Court's 2023 decision in the first appeal of this matter, our Court considered a defendant's argument that the automobile exception to the warrant requirement should *not* apply where his car had caught fire, rendering it undrivable, and had to be towed away from the scene. *State v. Corpening*, 109 N.C. App. 586 (1993). We held, *in a published opinion*, that the defendant's argument lacked merit where the undrivable vehicle was otherwise in a public place:

> Defendant also argues that because his vehicle was not driveable [sic], and was going to be towed, there were no exigent circumstances, and Deputy Wolford could have obtained a search warrant. Our Supreme Court has specifically held that the fact that an officer has probable cause to secure a search warrant and adequate time to obtain one, but fails to do so, does not vitiate the rule of *Carroll*. *No exigent circumstances other than the motor vehicle itself are required in order to justify a warrantless search of a motor vehicle in a public place based on probable cause to believe that it contains the instrumentality of or pertains to a crime.*

*Id.* at 590–91 (citations omitted) (emphasis added). In other words, we held in *Corpening* a warrantless search of a vehicle in a public place is permissible even if the vehicle is not, at the time, drivable. And like the vehicle in *Corpening*, the vehicle in this case, though undrivable, was capable of being towed away.

The Supreme Court of the United States has held that, though ready mobility *may have been* the original sole justification for the automobile exception, that is no longer the case. In other words, the automobile exception to the warrant requirement

7

may still apply in certain situations even where the vehicle is immobile because of

the lower expectation of privacy people have in their automobiles driven in public:

> [A]lthough ready mobility alone was perhaps the original justification for the vehicle exception, our later cases have made clear that ready mobility is not the only basis for the exception. The reasons for the vehicle exception, we have said, are twofold. Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office.
>
> Even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception [to the warrant requirement].

*California v. Carney*, 471 U.S. 386, 391 (1985) (internal citations and marks omitted).

That Court had previously stated that a car being immobile is not the end of the

inquiry:

> [T]he justification to conduct . . . a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant.

*Michigan v. Thomas*, 458 U.S. 259, 261 (1982) (citation and footnote omitted).

Though not binding on our Court, other courts have held that the automobile

exception to the warrant requirement may apply in certain situations where the

vehicle is otherwise incapable of being driven.  For instance, the Eighth Circuit has

explained in a case involving a vehicle stuck in a ditch:

8

> Here, although not readily mobile, the pickup truck did not appear to have lost its inherent mobility. It was merely stuck in a ditch. Inasmuch as there was no evidence of any permanent immobility, it was reasonable for the officers who conducted the search to conclude that all the truck needed was to be towed out of the ditch and then it could have been driven away.

*United States v. Maggard*, No. 00-1146, 2000 U.S. App. LEXIS 11756, at *3 (8th Cir. May 26, 2000). *See also United States v. Mercado*, 307 F.3d 1226, 1228–29 (10th Cir. 2002) (finding that "mere temporary immobility due to a readily repairable problem . . . does not remove the vehicle from the category of 'readily mobile' "); *Unites States v. Fields*, 456 F.3d 519, 524 (5th Cir. 2006) (exception applies to crashed vehicle with repairable issues).

The Sixth Circuit held that the automobile exception applied to a search of a vehicle which was "on a jack with one wheel removed for repair of a flat tire," as a vehicle could otherwise be easily moved:

> We do not think the automobile exception to the warrant requirement should turn on the condition of the vehicle or whether, as a practical matter, it could be spirited away from the police before a search could be completed. Considerations of factors of this nature would just add more uncertainty as to what is permitted and what is prohibited. We believe the Supreme Court has moved to where the key inquiry is probable cause and, if that is present, most, if not all, auto searches will not require a warrant. It appears that the fact that an automobile is involved has subsumed in most fact situations any requirement for separate and distinct exigent circumstances.

*United States v. Rommann*, 902 F.2d 1570 (6th Cir. 1990).

9

The Second Circuit has explained that the fact the automobile in question could be towed away was sufficient for the automobile exception to apply, similar to *Corpening*:

> Although Jones argues that the automobile exception could not apply under these factual circumstances because the rental car was "significantly damaged and undriveable," …, we find that argument unpersuasive. As the Supreme Court has emphasized, the reasoning behind the automobile exception "does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant." *Michigan v. Thomas*, 458 U.S. 259, 261 [ ] (1982) (per curiam). Thus, "[e]ven where there is little practical likelihood that the vehicle will be driven away, the exception applies at least when that possibility exists." *United States v. Howard*, 489 F.3d 484, 493 (2d Cir. 2007). Here*, the possibility that Jones's car could be towed from the scene, by itself, is sufficient for the automobile exception to apply even though the rental car may have been inoperable.*

*United States v. Jones*, 2024 U.S. App. LEXIS 25563 (2024). (emphasis added)

Our Court must be careful that the "good faith" exception not be applied in a way that swallows the exclusionary rule. However, based on our published opinion in *Corpening*, opinions from the Supreme Court of the United States that a car's temporary immobility is not fatal to the automobile exception being applied, and opinions from many federal circuits, we conclude the trooper in this case objectively acted in good faith in conducting the search of the vehicle without a warrant.

10

Accordingly, the trial court did not err in denying Defendant's motion to suppress,

based on the "good faith" exception.

NO ERROR.

Judge STROUD concurs in result only by separate opinion.

Judge TYSON dissents by separate opinion.

STROUD, Judge, concurring in result only.

The trial court rightly denied Defendant's motion to suppress because the good-faith exception to the exclusionary rule applies. The lead opinion reaches the same result, but its reasoning is wrong. It agrees with the trial court that Trooper Sanders "had probable cause to search the vehicle" and that *Davis v. United States*, 564 U.S. 229 (2011), applies. Neither conclusion is necessary: one has nothing to do with the good-faith exception; the other misapplies *Davis*.

Still, even if "the trial court's reasoning for denying [a] motion to suppress was incorrect, we are not required on this basis alone to determine that the ruling was erroneous." *State v. Austin*, 320 N.C. 276, 290, 357 S.E.2d 641, 650 (1987) (citing *State v. Gardner*, 316 N.C. 605, 342 S.E.2d 872 (1986)). "The crucial inquiry for this Court is admissibility and whether the ultimate ruling was supported by the evidence." *Id.* That inquiry ends with the right answer here: the good-faith exception to the exclusionary rule applies, so the evidence comes in. I concur only in the result.

Any analysis of this case must begin with our Supreme Court's decision in the first appeal. It held that Trooper Sanders's (Sanders) warrantless "search for evidence violated the Fourth Amendment," and no exception to the warrant requirement applied. *State v. Julius*, 385 N.C. 331, 341, 892 S.E.2d 854, 863 (2023). In particular, the Court determined that the automobile exception didn't apply. That exception requires vehicle mobility as "a fundamental prerequisite"—the vehicle "must be in a condition in which ready use is possible." *Id.* at 339, 892 S.E.2d at 861.

This vehicle, however, was immobile—stuck in a ditch, partially submerged, unable to be driven—so "an exigency did not exist." *Id.* at 340, 892 S.E.2d at 861.

The Court continued. The next question, it said, was "whether the exclusionary rule is the proper remedy for this particular violation." *Id.* at 341, 892 S.E.2d at 863. The trial court "never reached the issue of whether exclusion of the evidence was appropriate, and if so, whether any exceptions to the exclusionary rule would be applicable, because it concluded that a valid search occurred." *Id.* So the Supreme Court "reverse[d] . . . and remand[ed] to the trial court to determine if the evidence should be suppressed pursuant to the exclusionary rule." *Id.* With that remand instruction in mind, I turn to our standard of review.

"The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Heath*, 281 N.C. App. 465, 468, 868 S.E.2d 165, 167 (2022) (citation omitted). "Unchallenged findings are deemed supported by competent evidence and are binding on appeal." *State v. Fields*, 268 N.C. App. 561, 566, 836 S.E.2d 886, 890 (2019) (citation omitted). We review conclusions of law *de novo*—meaning we consider "the matter anew and freely substitute[ ] [our] own judgment for that of the lower tribunal." *Heath*, 281 N.C. App. at 468, 868 S.E.2d at 167 (citation omitted).

And even if the trial court's "reasoning for denying [the] defendant's motion to suppress was incorrect, we are not required on th[at] basis alone to determine that

2

the ruling was erroneous." *Austin*, 320 N.C. at 290, 357 S.E.2d at 650 (citing *Gardner*, 316 N.C. at 605, 342 S.E.2d at 872). "The crucial inquiry for this Court is admissibility and whether the ultimate ruling was supported by the evidence." *Id.*

In my view, the trial court's ultimate ruling—denying Defendant's motion to suppress—was correct. But its analysis was largely misplaced. The trial court made several unchallenged findings about what Sanders faced and how he responded. Our job is to assess whether those findings support the court's legal conclusion. As I explain below, they do.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It "contains no provision expressly precluding the use of evidence obtained in violation of its commands," *Arizona v. Evans,* 514 U.S. 1, 10 (1995), but the Supreme Court's "decisions establish an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139 (2009) (citing *Weeks v. United States*, 232 U.S. 383, 398 (1914)). This "judicially created rule," at bottom, "is 'designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" *Id.* at 139-40 (citation omitted).

We apply the exclusionary rule where it "result[s] in appreciable deterrence" and "the benefits of deterrence . . . outweigh the costs." *Id.* at 141 (quoting *United States v. Leon,* 468 U.S. 897, 909 (1984)). The rule "serves to deter deliberate,

reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.* at 144. In thus deciding whether to apply the exclusionary rule, we focus "on the 'flagrancy of the police misconduct' at issue." *Davis*, 564 U.S. at 238 (quoting *Leon*, 468 U.S. at 909). Put another way, the "deterrence benefits of exclusion var[y] with the culpability of the law enforcement conduct." *Id.* (internal quotation marks and citation omitted). When officers "exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong." *Id.* But when officers "act with an objectively reasonable good-faith belief that their conduct is lawful," or their "conduct involves only simple, isolated negligence," the "deterrence rationale loses much of its force, and exclusion cannot pay its way." *Id.*

The unchallenged findings show that Sanders and Deputy Hicks arrived at a hit-and-run scene where the driver had fled after causing property damage. Bystanders said that the driver told them "he could not stay on the scene because he had warrants." Sanders asked Defendant whether the driver had identification in the vehicle. She said that she didn't know. Sanders then searched the vehicle "for any evidence of the driver's identity." In the front passenger floorboard, where Defendant had been sitting, he found a Nike bag. Defendant said it belonged to "Kyle." "Still searching for evidence of the driver's identity," Sanders opened the bag and found a black box "large enough to hold a driver's license." He opened it.

Nothing in this sequence reflects deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights. Sanders was investigating an automobile accident where the driver fled because he had outstanding warrants. He searched for identification—a legitimate investigative need. When Defendant identified the Nike bag as belonging to the fleeing driver, Sanders opened it looking for the driver's identity. When he found a box the right size to hold a driver's license, he opened that too.

As noted earlier, our Supreme Court held that Sanders's search violated the Fourth Amendment under the automobile exception because the vehicle's immobility eliminated the exigency. *Julius*, 385 N.C. at 340, 892 S.E.2d at 862. The Court's analysis seems to have assumed Sanders had probable cause to believe the vehicle contained evidence of the fleeing driver's identity. But even with probable cause, Sanders needed a warrant to search an immobile vehicle. U.S. Const. amend. IV. So Sanders's mistake wasn't lacking probable cause; it was misjudging whether exigency still existed given the vehicle's immobility. That distinction matters for culpability. Sanders had legitimate grounds to believe the vehicle contained evidence. His error was a judgment call about whether the fleeing driver created exigency sufficient to bypass the warrant requirement for an immobile vehicle. And that belief—given a fleeing driver with warrants—wasn't culpable. It was the type of "objectively reasonable good-faith belief" that doesn't warrant exclusion. *Davis*, 564 U.S. at 238 (quoting *Leon*, 468 U.S. at 909).

5

The balancing test confirms this. Exclusion works only when police conduct is "deliberate enough to yield 'meaningfu[l]' deterrence, and culpable enough to be 'worth the price paid by the justice system.'" *Id.* at 240 (quoting *Herring*, 555 U.S. at 144). Sanders didn't deliberately violate the Fourth Amendment. He made a judgment call about exigency while dealing with a wrecked car and a fleeing suspect. Suppressing this evidence would penalize a reasonable mistake at a high cost. The evidence includes methamphetamine, scales, two phones, a firearm, and $1,785 in cash. All of it would be barred from a prosecution for several drug offenses. As the trial court found, "exclusion [here] would do nothing to deter police misconduct and would come at a high cost to both the truth and public safety in reducing the flow of illegal, dangerous, and harmful drugs[,] which destroys so many lives and fosters so many other crimes."

The unchallenged findings support the trial court's legal conclusions. Sanders didn't act with the culpability that warrants exclusion, and suppressing this evidence wouldn't serve any deterrent purpose. This straightforward analysis should end the case. Both the trial court and lead opinion reached the right result. But their paths to get there are needlessly complicated and legally flawed.

The first legal flaw arises in the trial court's and lead opinion's probable cause analysis. The trial court concluded that "based on a totality of the circumstances[,] the officers wholly and completely acted objectively and reasonably with probable cause in all their actions." To aid "in determining the application of the [g]ood[-

6

][f]aith exception to the [e]xclusionary [r]ule," the court imported the probable cause analysis from Justice Newby's separate opinion at the Supreme Court. *See Julius*, 385 N.C. at 342, 892 S.E.2d at 863 (Newby, C.J., concurring in part and dissenting in part). And the lead opinion "agrees with the trial court" that Sanders "had probable cause to search the vehicle for something that would further identify the driver who had crashed the vehicle."

But the trial court and lead opinion shouldn't be analyzing whether Sanders had probable cause at all. Probable cause is irrelevant to the good-faith exception. And analyzing it ignores the Supreme Court's remand instructions. The Court's final paragraph left no room for confusion: "Here, the search for evidence violated the Fourth Amendment." *Id.* at 341, 892 S.E.2d at 863. The next question was "whether the exclusionary rule is the proper remedy for this particular violation." *Id.* To answer it, the Court "remand[ed] to the trial court to determine if the evidence should be suppressed pursuant to the exclusionary rule." *Id.* So again, Sanders's search violated the Constitution; the only question left on remand was whether some exception to the exclusionary rule applied.

Whether an officer had probable cause doesn't answer that question. In fact, probable cause plays no role in the good-faith exception's analysis. And it mattered to Justice Newby's separate opinion only because he relied on the exigent circumstances exception to the *warrant requirement*. *See id.* at 345, 892 S.E.2d at 865 (Newby, C.J., concurring in part and dissenting in part) ("The Supreme Court of

7

the United States and this Court . . . have recognized exceptions to the warrant requirement where there is probable cause and exigent circumstances."). Said another way, he didn't think that the Fourth Amendment had been violated, so the exclusionary rule's exceptions never came into play.

And even if probable cause existed, it's irrelevant. Warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). The Supreme Court held that none of those exceptions applied. Probable cause alone has never justified a warrantless search—otherwise, officers could simply bypass the warrant requirement whenever they had probable cause. And the exclusionary rule doesn't ask whether officers had probable cause. It asks whether the search violated the Fourth Amendment.

Turn now to the trial court and lead opinion's application of *Davis*. The trial court determined that Sanders "was objectively and reasonably acting pursuant to the precedent established in [*State v. Corpening*, 109 N.C. App. 586, 427 S.E.2d 892 (1993),] as well as other precedent reasonably relied upon by law enforcement." According to the trial court, *Corpening* held that "it was the motor vehicle itself that provided the exigencies for a warrantless search of a . . . vehicle not the mobility of the vehicle at the time," and in that case, this Court "applied the motor vehicle exception to an immobile vehicle." The trial court found that the Supreme Court "in

8

*State v. Julius*, however, overrule[d] the *Corpening* precedent[,] now focusing on the

actual mobility of the vehicle to determine the applicability of the motor vehicle

exception to search warrants." So as in *Davis*, 564 U.S. at 229, "the [e]xclusionary

[r]ule should not be appli[ed] to [the] evidence found" during Sanders's warrantless

search "based on binding precedent" at "the time of his search."

The lead opinion agrees that *Davis* controls:

> [B]ased on our holding in *Corpening*, language from the
> Supreme Court of the United States['] opinions that a car's
> temporal immobility is not fatal to being covered by the
> automobile exception, and language from other federal
> cases, we conclude the trooper in this case objectively acted
> in good faith in conducting the search of the vehicle without
> a warrant.

Relying on several cases, including five different non-binding federal circuit court

opinions, the lead opinion suggests that temporary immobility might not defeat the

automobile exception. From this, it apparently concludes that Sanders's warrantless

search was objectively reasonable and the good-faith exception applies.

This badly misreads *Davis*. There, the Supreme Court held that the

exclusionary rule does not apply when officers objectively relied on "binding appellate

precedent" that "specifically *authorize[d]*" their search. *Davis*, 564 U.S. at 241. When

the search in *Davis* occurred, the Eleventh Circuit "had long read" the Supreme

Court's decision in *New York v. Belton*, 453 U.S. 454 (1981), "to establish a bright-line

rule authorizing substantially contemporaneous vehicle searches incident to arrests

of recent occupants." *Id.* at 235 (citing *United States v. Gonzalez*, 71 F.3d 819, 822,

9

824-27 (11th Cir. 1996)). Years later, the Court modified that rule in *Arizona v. Gant*, 556 U.S. 332 (2009), holding that such searches are valid only if the arrestee remains within reaching distance of the passenger compartment. *Id.* at 234-35.

The officers in *Davis* had searched after removing the arrestee and placing him in a patrol car. *See id.* at 235. Their search was thus valid under *Belton* and Eleventh Circuit precedent but not under *Gant*. The Supreme Court concluded that the search violated the Fourth Amendment but declined to suppress the evidence: "Because suppression would do nothing to deter police misconduct in these circumstances, and because it would come at a high cost to both the truth and the public safety, we hold that searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." *Id.* at 232. So *Davis*'s rule is that evidence obtained from searches conducted in objectively reasonable reliance on "binding appellate precedent" that "specifically *authorizes*" the search is not subject to the exclusionary rule—even when that precedent is later overruled. *Id.* at 241.

This case is nothing like *Davis*. The lead opinion doesn't say our Supreme Court overruled *Corpening,* as the trial court concluded—indeed, it says *nothing* about that conclusion at all. Instead, it implies the law surrounding the automobile exception was unclear, making Sanders's actions covered by the good-faith exception.

But *Davis* doesn't protect searches based on unclear or conflicting authority. *Davis* applies when "binding appellate precedent specifically *authorizes* a particular police practice." *Id.* The precedent must be binding—not persuasive. And it must

10

specifically authorize—not just make plausibly arguable—the officer's conduct. The lead opinion inverts this. It points to several non-binding decisions suggesting that "temporary immobility is not fatal to being covered by the automobile exception," then concludes the officers "objectively acted in good faith." But *Davis* doesn't apply whenever a lawyer can construct a colorable argument from some concoction of cases. It applies when officers follow clear, binding precedent that later changes.

Justice Sotomayor's concurrence made this distinction explicit. *Davis*, she wrote, "does not present the markedly different question whether the exclusionary rule applies when the law governing the constitutionality of a particular search is unsettled." *Id.* at 250 (Sotomayor, J., concurring in the judgment). When officers act "in the absence of case law (or other authority) specifically sanctioning such action, exclusion of the evidence obtained may deter Fourth Amendment violations." *Id.* So even if the law surrounding the automobile exception was unclear, that uncertainty undermines the trial court's and lead opinion's reasoning. The good-faith exception under *Davis* doesn't apply when officers act amid legal ambiguity. If officers are unsure whether the law permits a warrantless search, they know what to do: get a warrant.

Worse still, the law hasn't changed. The automobile exception has always required exigency—usually mobility—to justify bypassing the warrant requirement. In *Carroll v. United States*, for instance, the Supreme Court made clear that this exception applies "where it is not practicable to secure a warrant because the vehicle

11

can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." 267 U.S. 132, 153 (1925). Our Supreme Court adopted this mobility-based exigency requirement in *State v. Isleib*, 319 N.C. 634, 639, 356 S.E.2d 573, 577 (1987), holding that "the inherent mobility of the automobile is itself the exigency" while cautioning "this is not to say that every automobile case will involve exigent circumstances."

*Corpening* applied this rule. There, a vehicle's rear tire caught fire while the defendant was driving; he pulled into a public parking lot, found a water hose, and extinguished the fire. 109 N.C. App. at 588, 427 S.E.2d at 893-94. A deputy arrived, smelled illegal liquor, and searched without a warrant. *Id.* at 588, 427 S.E.2d at 894. The defendant argued that because the vehicle "was not driveable, and was going to be towed, there were no exigent circumstances." *Id.* at 590, 428 S.E.2d at 895. This Court disagreed, explaining that "no exigent circumstances other than the motor vehicle itself are required in order to justify a warrantless search of a motor vehicle in a public place based on probable cause." *Id.* at 591, 428 S.E.2d at 895.

The vehicle in *Corpening*, however, wasn't immobile—it was inoperable. It couldn't be driven at that moment. Yet it sat in a public parking lot, readily accessible, and could be quickly towed away or repaired. The exigency that *Isleib* and *Carroll* require—the risk that the vehicle could be removed—still existed. *Corpening*'s holding suggests that temporary mechanical failure doesn't eliminate mobility-based exigency when the vehicle remains readily accessible in a public place.

12

In *Julius*, our Supreme Court applied this same framework and reached a different result on different facts. And even if it is difficult to reconcile *Corpening* with *Julius* or other cases dealing with vehicles with varying degrees of immobility, in this case, the Supreme Court has already decided the issue—this Court need not justify that ruling. Again, the Court held that "because the record demonstrates that the vehicle was immobile, an exigency did not exist, and the automobile exception does not apply." *Id.* at 340, 892 S.E.2d at 861.

In short, the law before *Julius* required exigency, and the law after *Julius* requires exigency. What changed was not the legal rule; it was its application to a vehicle that was immobile, not just temporarily inoperable. *Davis* doesn't apply when the law stays the same, but the facts are different.

And in *Julius*, the Supreme Court made clear it wasn't changing the law. The Court had every opportunity to overrule *Corpening*. The parties extensively briefed it. The State discussed it in its principal brief. And Defendant devoted two pages to analyzing *Corpening*'s relationship to *Isleib*. If the Court had intended to overrule *Corpening*, it would have said so. Instead, the Court seemingly distinguished *Corpening* in footnote 3, noting that "there may be a distinction between immobile and inoperable." *Id.* at 339 n.3, 892 S.E.2d at 861 n.3. That distinction is crucial. An inoperable vehicle in a parking lot can be quickly towed, repaired, or moved. An immobile vehicle stuck in a ditch and partially submerged cannot. *Corpening* addressed the former. *Julius* addressed the latter.

13

In sum, the trial court misapprehended the legal question on remand but found the facts as directed and reached the right result. The good-faith exception applies because Sanders acted with an objectively reasonable belief that his search was lawful, not with the culpability warranting exclusion. Both the trial court and the lead opinion arrived at the right answer for the wrong reasons—revisiting probable cause after the Supreme Court held the search unconstitutional and misapplying *Davis* when the law never changed. I therefore concur only in the result.

TYSON, Judge, dissenting.

Our Supreme Court previously held in this case the evidence leading to Defendant's arrest was obtained by means of an illegal search of a vehicle without a warrant, which was not justified pursuant to either the automobile exception or a search incident to lawful arrest. *State v. Julius*, 385 N.C. 331, 892 S.E.2d 854 (2023).

The Supreme Court and this Court remanded this case to the trial court to determine whether the evidence obtained from the unlawful search of the immobile automobile should have been suppressed pursuant to the exclusionary rule or admitted based upon the "good faith" exception. *Id.*

Upon remand, the trial court failed to conduct a hearing and did not receive new evidence. The State failed to prove beyond a reasonable doubt the "good faith" exception to the constitutional requirement of a warrant applied and to avoid the application of the exclusionary rule. The order is properly vacated and the case remanded for dismissal of the charges based upon the illegally obtained evidence. I respectfully dissent.

## II.  Fourth Amendment

The Fourth Amendment was drafted and incorporated into the Bill of Rights as one of the absolute and enumerated predicates required by the People for Ratification of the Constitution of the United States. This Amendment *guarantees*: "The right of the people to be *secure in their persons*, houses, papers, *and effects*, *against unreasonable searches and seizures*, *shall not be violated*, and *no Warrants*

*shall issue*, but upon *probable cause*, supported by Oath or affirmation, and *particularly describing* the place to be searched, and *the persons or things to be seized.*" U.S. Const. amend. IV. (emphasis supplied). Reviewed for both textualism and originalism, and including its express purpose, this Amendment mandate of *"shall not be violated"* "says what it says," and "it means what it means."

The Supreme Court of the United States held sixty years ago:

> The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained. In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search.

*Schmerber v. California*, 384 U.S. 757, 769–70, 16 L. Ed. 2d 908, 919 (1966).

Without probable cause and exigent circumstances, or another exception to the strict warrant requirement, a warrantless search violates the Fourth Amendment to the Constitution of the United States and Article One, Sections Nineteen and Twenty of the North Carolina Constitution. Any evidence illegally obtained thereby is subject to exclusion. *Id.* U.S. Const. amend. IV; N.C. Const. art. 1, §§ 19-20.

## A. Exclusionary Rule

The exclusionary rule, as implemented and interpreted by the Supreme Court of the United States, bars the admission of evidence obtained in violation of the Fourth Amendment. *See Weeks v. United States*, 232 U.S. 383, 58 L. Ed. 2d 652 (1914); *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441 (1963). This rule to

- 2 -

exclude illegally obtained evidence applies to and is binding upon the states by virtue of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081 (1961).

The exclusionary rule is a judicially-created remedy designed to protect individuals from illegal searches and seizures and to deter unlawful police conduct. *United States v. Leon*, 468 U.S. 897, 916, 82 L. Ed. 2d 677, 694 (1984). "The right to be free from the initial invasion of privacy and the right of exclusion are coordinate components of the central embracing right to be free from unreasonable searches and seizures." *Id.* at 935, 82 L. Ed. 2d at 706 (Brennan, J., dissenting); *see also Massachusetts v. Sheppard*, 468 U.S. 981, 82 L. Ed. 2d 737 (1984); *Herring v. United States*, 555 U.S. 135, 172 L. Ed. 2d 496 (2009); *Davis v. United States*, 564 U.S. 229, 180 L. Ed. 2d 285 (2011).

Pursuant to federal law, under certain narrow circumstances, the exclusion of results of illegal searches and seizures is not compelled where suppression would purportedly have "no deterrent effect." *Herring,* 555 U.S. at 141 n.4, 172 L. Ed. 2d at 507n.4.

## B. Exceptions from Exclusion

In this case prior to remand, our Supreme Court noted, law enforcement officers without a warrant may:  (1) search the arrestee's person and the area within his or her immediate control upon lawful arrest; and, (2) search a vehicle incident to a recent occupant's arrest if: (a) the arrestee is within reaching distance of the passenger compartment at the time of the search; or, (b) it is reasonable to believe

the vehicle contains evidence of criminal activity related to the arrest. *Julius*, 385 N.C. at 337–38, 892 S.E.2d at 859–60. Our Supreme Court determined neither of those justifications applied to the facts in this case since Kyle, the undisputed driver of the vehicle, had avoided an on-scene arrest by leaving the scene. *Id.* at 339, 892 S.E.2d at 861. The Court agreed that no on-scene search incident to an arrest of Kyle was possible. *Id.*

Our Supreme Court in *Julius* next considered whether the search of the admittedly immobile vehicle was justified under the "automobile exception." *Julius*, 385 N.C. at 339–340, 892 S.E.2d at 861. The Court held the automobile exception did not apply and remanded for the trial court to determine whether the "good faith exception" applied to allow admission of the illegally obtained evidence. *Julius*, 385 N.C. at 340–42, 892 S.E.2d at 861–63.

The "automobile exception" permits the warrantless search of a motor vehicle located in a public place when the exception's two underlying justifications "come into play," and provided the search is based upon probable cause. *Collins v. Virginia*, 584 U.S. 586, 591–92, 201 L. Ed. 2d 9, 17–18 (2018). This narrow automobile exception departs from "the general rule that officers may make a warrantless search *with probable cause only when* exigent circumstances exist." Robert L. Farb, Christopher Tyner, & Jeffrey B. Welty, *Arrest, Search, and Investigation in North Carolina*, 267 (6th ed. 2021) (emphasis supplied).

The automobile exception is founded and allowed upon two judicially created

- 4 -

justifications the ready mobility of vehicles and the purported reduced expectation of privacy a person has in a mobile motor vehicle versus other immoveable places. *California v. Carney*, 471 U.S. 386, 390–91, 85 L. Ed. 2d 406, 412–13 (1985); *Collins*, 584 U.S. at 591–92, 201 L. Ed. 2d at 17–18. The ready and inherent mobility of motor vehicles "served as the core justification for the automobile exception [to a warrant] for many years." *Id.* at 591, 201 L. Ed. 2d at 18.

In this case prior to remand, our Supreme Court held, "the record demonstrates that the vehicle was immobile, an exigency did not exist, and the automobile exception does not apply." *Julius*, 385 N.C. at 339–40, 892 S.E.2d at 861. The trial court and the majority's opinion erroneously assert the officers had probable cause, to search Defendant without a warrant, even though correctly noting: "In the first appeal, our Supreme Court determined the automobile exception to the warrant requirement did not apply. We are bound by that determination in this present appeal."

### *C. State v. Carter*

In 1988, the Supreme Court of North Carolina pronounced Article I, Section 20 of the North Carolina Constitution contains an exclusionary rule. *State v. Carter*, 322 N.C. 709, 723-24, 370 S.E.2d 553, 561-62 (1988). The Court further held the exclusionary rule did not contain a good faith exception:

> This case presents us with the question of whether there is a good faith exception under article I, section 20 of the North Carolina Constitution to the exclusion of evidence

> obtained by unreasonable search and seizure. We hold that there is no good faith exception to the requirements of article I, section 20 as applied to the facts of this case and, accordingly, we grant defendant a new trial because evidence that should have been excluded under our state constitution was admitted in the trial of his case.

*Id.* at 710, 370 S.E.2d at 554.

The Supreme Court left the implementation of a "good faith exception" to the legislature: "If a good faith exception is to be applied to this public policy, let it be done by the legislature, the body politic responsible for the formation and expression of matters of public policy." *Id.* at 724, 370 S.E.2d at 562.

Judges on this Court later questioned whether the holding in *Carter* was founded on constitutional or solely on statutory grounds. *See State v. Gore*, 272 N.C. App. 98, 112–13, 846 S.E.2d 304 (2020) (Dillon, J., concurring in part) (opining "a closer reading of *Carter* reveals that our Supreme Court did not hold that the absence of a good faith exception under state law at that time (in 1988) was a *constitutional* matter which could only be changed by constitutional amendment.") (emphasis original); *see also State v. Foster*, 264 N.C. App. 135, 823 S.E.2d 169, 2019 WL 661571, *12–13 n.2 (2019) (unpublished) (positing the language in *Carter* detailing the good faith exception has been superseded by statute); Jonathan Holbrook, Resurrecting the Good Faith Exception in North Carolina?, North Carolina Criminal Law Blog (July 14, 2020) (examining these arguments).

## D. Statutory Good Faith Exception

In 2011, the General Assembly enacted a statutory good faith exception to the exclusionary rule by amending N.C. Gen. Stat. § 15A-974 to provide illegally obtained evidence is not subject to automatic exclusion for a substantial violation of the state's Criminal Procedure Act, if the officer acted in an objectively reasonable good faith belief that his or her actions were lawful. N. C. Sess. L. 2011-6.   The General Assembly also requested for the Supreme Court of North Carolina to "reconsider, and overrule, its holding in *State v. Carter* [concluding] the good faith exception to the exclusionary rule[,] which exists under federal law, does not apply under North Carolina State law." *Id.* at § 2.   This statutory change apparently occurred in response to the Court's invitation for legislative change in *Carter*.  *Carter,* 322 N.C. at 724, 370 S.E.2d at 562.

The "good faith" exception has barred the exclusionary rule's application and allowed illegally obtained evidence to be admitted in cases when officers have objectively and reasonably relied in good faith upon: (1) a warrant later determined to be deficient; *Leon*, 468 U.S. 897, 82 L. Ed. 2d 897; (2) on subsequently invalidated statutes; *Illinois v. Krull,* 480 U.S. 340, 94 L. Ed. 2d 364 (1987); (3) on erroneous arrest warrant information, *Herring v. United States*, 555 U.S. 135, 172 L. Ed. 2d 496 (2009); *Arizona v. Evans*, 514 U.S. 1, 131 L. Ed. 2d 34 (1995); and, (4) on binding appellate precedent, *Davis,* 564 U.S. 229, 180 L. Ed. 2d 285.  None of these established and objective "good faith" exceptions, which are based upon defective warrants are

applicable to the facts before us to overcome the constitutionally-required exclusion of illegally obtained evidence. *Schmerber*, 384 U.S. at 769–70, 16 L. Ed. 2d at 919.

The officers here neither sought nor obtained a warrant, whether valid or not. While *dicta* in *Julius* may prompt the majority's notion to readdress application of the exclusionary rule's principles, the facts in *Julius* and binding precedents provide no basis to apply the "good faith exception" in this case and for the State to use the evidence illegally obtained without a warrant. *Julius*, 385 N.C. at 339–40, 892 S.E.2d at 861.

The majority's and concurring opinions propose to expand the good faith exception to include situations where law enforcement officers neither sought a warrant nor obtained a defective warrant prior to the search. At no time during the events leading up to the search of the immobile vehicle or thereafter did either the deputy or the trooper seek a warrant or present any objective basis of "good faith." The scene and witnesses were secure, and one officer could have sought a search warrant, while the other remained to secure and preserve the scene. "[T]he Fourth Amendment protect[ions] forbid any such intrusions on the mere chance that desired evidence might be obtained." *Schmerber*, 384 U.S. at 769–70, 16 L. Ed. 2d at 919.

## E. Good Faith Exception to the Exclusionary Rule

Defendant argues the trial court prejudicially erred by denying her motion to suppress and upon remand it misapplied the good faith exception to the exclusionary rule in this case. She asserts the trial court's order is prejudicial and contrary to the

Supreme Court of North Carolina's mandate, longstanding Fourth Amendment and North Carolina Constitution precedents, and the State's burden of proof on remand. Defendant is correct in arguing the State failed to prove beyond a reasonable doubt on remand the good faith exception applies to these facts.

The Supreme Court held, without the lawful search of the vehicle, or otherwise, no probable cause allowed the arrest and search of Defendant and her effects. *Julius*, 385 N.C. at 338, 892 S.E.2d at 860–61. Furthermore, the evidence produced by searching Defendant's person and effects without a warrant did not *ipso facto* justify the vehicle search because Defendant's arrest was unlawful. *Id.* It is also undisputed Defendant was not inside of or near the car at the time of her arrest, and Defendant was neither the owner nor driver of the immobile vehicle. *Id.*

"When seeking to admit evidence discovered by way of warrantless search in a criminal prosecution, the State bears the burden of establishing that the search falls under an exception to the warrant requirement." *State v. Terrell*, 372 N.C. 657, 665, 831 S.E.2d 17, 22–23 (2019) (citing *State v. Cooke*, 306 N.C. 132, 135, 291 S.E.2d 618, 620 (1982)) (internal quotation marks omitted).

The State was tasked by the Supreme Court and this Court on remand to carry its burden to prove beyond a reasonable doubt the "good faith" exception to the constitutional requirement of a warrant applied to avoid the application of the exclusionary rule. Upon remand and without hearing or receiving additional evidence, the trial court denied Defendant's motion to suppress evidence obtained by

the illegal search by invoking the good faith exception. The court reasoned the officers had objectively and reasonably relied upon the analysis contained in *State v. Corpening*, 109 N.C. App. 586, 427 S.E.2d 892 (1993).

The majority's opinion again correctly states, "The *only issue* remaining for us to determine is whether the trial court correctly concluded the 'good faith' exception applied such that the exclusionary rule does not apply." (emphasis supplied).

The Supreme Court of the United States, prior to *Collins*, had held a warrantless vehicle search may be conducted even after a vehicle and its contents have been seized, secured, and stored by law enforcement officers. *See United States v. Johns*, 469 U.S. 478, 83 L. Ed. 2d 890 (1985). Since there is no risk of such a vehicle being driven away, the reduced expectation of privacy in a vehicle standing alone as justification has purportedly emerged in federal cases as the primary justification for the exception. *See* Farb, Tyner, & Welty, *Arrest, Search, and Investigation in North Carolina.* 267 n. 293 (6th ed. 2021) (asserting mobility "hardly has much force when the Court permits a warrantless search even after a vehicle and its contents have been immobilized"); *see also Michigan v. Thomas*, 458 U.S. 259, 261, 73 L. Ed. 2d 750, 753 (1982) (per curiam) ("[T]he justification to conduct . . . a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant.").

Reviewing the facts in: *United States v. Gastiaburo*, the U.S. Court of Appeals for the Fourth Circuit stated, "[u]nder the Supreme Court's precedents, the fact that impoundment may have made it virtually impossible for anyone to drive the car away or to tamper with its contents is irrelevant to the constitutionality of a warrantless search . . . .").  16 F.3d 582, 586 (4th Cir. 1994).

We all agree the Federal and State's Constitutions require "[w]e must be careful that the 'good faith' exception not be applied in a way that swallows the exclusionary rule."  Our Supreme Court prior to remand of this case did not apply the exclusionary rule and exclude the evidence as North Carolina's appellate courts have done after finding a Fourth Amendment violation, nor did it affirm the trial court's denial of Defendant's motion to suppress.

We also agree our task is limited and "[t]he only issue remaining for us to determine is whether the trial court correctly concluded the 'good faith' exception applied such that the exclusionary rule does not apply." The majority's opinion unnecessarily consults federal court of appeals decisions in five foreign circuits as persuasive authority to decide this issue.  In *State v. Eagle*, 286 N.C. App. 80, 879 S.E.2d 377 (2022) and *State v. Reed*, 257 N.C. App. 524, 810 S.E.2d 245 (2018), this Court concluded, after finding Fourth Amendment violations, the trial court had erred in denying the defendants' motions to suppress to exclude.  *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E. 2d 30, 37 (1989).

In *State v. McKinney*, 361 N.C. 53, 637 S.E.2d 868 (2006) and *State v. Mullinax*,

- 11 -

282 N.C. App. 341, 870 S.E.2d 306 (2022), our appellate courts remanded those cases for, respectively: (1) a determination of whether *the warrant was validly based on probable cause* after disregarding the information in the warrant application gained in unlawful search, *McKinney*, 361 N.C. at 65, 637 S.E.2d at 876; and, (2) for additional findings about justification for extended seizure or whether an exception to the exclusionary rule applied, *Mullinax*, 282 N.C. App. at 350, 870 S.E.2d at 312. These cases were remanded to the trial court to determine whether exclusion of the evidence was appropriate and if exceptions to the exclusionary rule were applicable.

"Except for *Illinois v. Krull*, 480 U.S. [340], 94 L. Ed. 2d 364 (1987), the United States Supreme Court has applied a good faith exception to the exclusionary rule *only* in cases involving defective search warrants. *E.g., Massachusetts v. Sheppard*, 468 U.S. 981, 82 L. Ed. 2d 737 (1984)." *Carter*, 322 N.C. at 722, 370 S.E.2d at 561 (emphasis supplied). Here, no warrant whatsoever was sought or issued prior to the searches and seizures or thereafter, even though the scene and witnesses were secure, and at least two officers were present on the scene.

Officers seeking or obtaining a warrant was clearly an important condition precedent to the Supreme Court of the United States in *Leon*. "[O]ur evaluation of the costs and benefits of suppressing reliable physical evidence seized by officers *reasonably relying on a warrant issued by a detached and neutral magistrate* leads to the conclusion that such evidence should be admissible in the prosecution's case in chief." *Leon*, 468 U.S. at 913, 82 L.Ed.2d at 692 (emphasis supplied).

These latter cases noted the Supreme Court of the United States' rejection of indiscriminate application of the exclusionary rule, asserting the suppression of evidence should be a "last resort" rather than a "first impulse." *Id.* at 341; 892 S.E.2d at 863 (citing *Hudson v. Michigan*, 547 U.S. 586, 591, 165 L. Ed. 2d 56, 64 (2006)).

In its remand of this case, the Supreme Court noted: "Ultimately, unless evidence was obtained by sufficiently deliberate and sufficiently culpable police misconduct, resort to the massive remedy of suppressing evidence of guilt is unjustified." *Julius*, 385 N.C. at 341, 892 S.E.2d at 862 (internal quotation marks omitted). This "good faith" determination is a fact-based inquiry the State was required to prove beyond a reasonable doubt upon remand. The trial court erroneously and prejudicially failed to conduct a hearing, receive new evidence, or to address these mandates. *Id.*

### F. State v. Rogers

The Supreme Court of North Carolina more recently addressed the good faith exception to the exclusionary rule in *State v. Rogers*, __ N.C. __, __ S.E.2d __, 2025 LX 434650 (2025). In *Rogers*, after receiving a tip from a known confidential source about trafficking and distribution of cocaine in New Hanover County, *officers sought and received a court order* to seek information about the defendant, including cell-site location information ("CSLI"). *Id.* at __, __ S.E.2d at __, 2025 LX 434650, at *3-4.

Law enforcement officers used CSLI to track Defendant on a trip to California and stopped him upon his arrival in New Hanover County. Law enforcement officers

seized a trafficking quantity of cocaine. *Id.* at __, __ S.E.2d at __, 2025 LX 434650, at *6. The trial court denied the defendant's motion to suppress and the defendant entered an *Alford* plea. *Id.* This Court determined the application was not supported by probable cause and ordered a new trial, concluding it was bound by *Carter*. *Id.* at __, __ S.E.2d at __, 2025 LX 434650, at *7. This Court noted "this case could present an additional opportunity for our Supreme Court to formally adopt the legislature's proposed good-faith exception to the exclusionary rule under the North Carolina Constitution and [to] expressly overrule *Carter*." *Id.* The State appealed to the Supreme Court of North Carolina.

Chief Justice Newby, writing for the majority, provided a comprehensive history of the exclusionary rule and the good faith exception. The Supreme Court held the Constitution of the United States did not require the exclusion of the CSLI data, which had been *obtained by court order*. *Id.* at __, __ S.E.2d at __, 2025 LX 434650, at *30.

The majority's opinion in *Rogers* then examined the applicability of the exclusion under North Carolina's Constitution. Prior to the Supreme Court of the United States' Fourt Amendment incorporation opinion in *Mapp*, illegally obtained evidence was generally admitted unless rendered inadmissible by a statute. *Id.* at __, __ S.E.2d at __, 2025 LX 434650, at *33.

Our Supreme Court further examined the contradictory holdings in *Carter,* asserting the General Assembly is "the body politic responsible for the formation and

expression of matters of public policy." *Carter*, 322 N.C. at 724, 370 S.E.2d at 562;

and to be the appropriate branch to adopt a "good faith exception" to the purported

constitutional rule the Court was instituting. *Rogers*, __ N.C. at __, __ S.E.2d at __,

2025 LX 434650, at *36-37 (citation omitted). The Supreme Court in *Rogers* expressly

overruled *Carter* and adopted the Supreme Court of the United States' reasoning in

*Leon*, holding:

> The State asks us to adopt a good faith exception in line
> with the federal good faith exception. While "we interpret
> the North Carolina Constitution independently of the
> United States Supreme Court's interpretation of the
> Federal Constitution," *Tirado*, 387 N.C. at 112, 911 S.E.2d
> at 59 (citing *Holmes v. Moore*, 384 N.C. 426, 437, 886
> S.E.2d 120, 130 (2023)), we are persuaded by the reasoning
> articulated by the Supreme Court for *adopting a federal
> good faith exception in Leon*, 468 U.S. 897, 104 S. Ct. 3405.
> After all, when "[c]onsidering the precise wording of Article
> I, Section 20, we find no support . . . that the 'text' itself
> calls for 'broader' protection than that of the Fourth
> Amendment." *Garner*, 331 N.C. at 506, 417 S.E.2d at 510.
> Thus, we adopt the Supreme Court's reasoning in *Leon*,
> 468 U.S. 897, 104 S. Ct. 3405, to hold that there is a good
> faith exception to any exclusionary rule arising from
> Article I, Section 20 of our state constitution equivalent to
> the federal good faith exception to the exclusionary rule
> arising out of the Fourth Amendment.
>
> Finally, we apply our state good faith exception to the facts
> of this case. We have already determined that the federal
> good faith exception applies here. Therefore, our state good
> faith exception, being equivalent to the federal good faith
> exception, also applies. Accordingly, the exclusion of the
> CSLI is not "required by . . . the Constitution of the State
> of North Carolina," N.C.G.S. § 15A-974(a)(1) (2023),
> meaning subdivision 15A-974(a)(1) does not compel
> exclusion of the CSLI on that basis[.]

*Id.* at __, __ S.E.2d at __, 2025 LX 434650, at *40-41(emphasis supplied).

The Supreme Court held Article I, Section 20 of the North Carolina Constitution does not require exclusion of the CSLI and reversed this Court's opinion and mandate in *Rogers,* which awarded a new trial. *Id.*

### G. State v. Corpening

On remand, the trial court relied upon this Court's decision of *State v. Corpening* to find and conclude the officers had objectively acted in reasonable reliance on existing law. 109 N.C. App. 586, 427 S.E.2d 892 (1993). In *Corpening,* this Court applied our Supreme Court's holding in *State v. Isleib* to a factual scenario involving a disabled vehicle temporarily located in a public parking lot. The Supreme Court in *Isleib,* as here in *Julius,* did not announce or extend any categorical rule automatically subjecting immobile vehicles to the automobile exception. *See id.* at 590–91, 427 S.E.2d at 895. In contrast, in *Isleib* and as here, our Supreme Court expressly held the "inherent mobility" of a vehicle under the automobile exception does not *per se* justify a warrantless search. 319 N.C. 634, 639, 356 S.E.2d 573, 576 (1987).

The Supreme Court of the United States likewise defines the exception by its ready mobility rationale, concluding, the vehicle's "capacity to be 'quickly moved' " is "clearly the basis of the holding in *Carroll* [*v. United States*, 267 U.S. 132, 153, 69 L. Ed. 2d at 551 (1925)]," and "our cases have consistently recognized ready mobility as one of the principal bases of the automobile exception" for a warrant. *Carney*, 471

U.S. at 390–91, 85 L. Ed. 2d at 412–13.

The automobile exception's ready mobility requirement long predated the search in this case, and neither *Corpening, Isleib,* nor our Supreme Court's 2023 decision in *Julius* resulted in a change in the law, contrary to the trial court's holding on remand,. *Julius*, 385 N.C. 331, 892 S.E.2d 854; *Isleib*, 319 N.C. at 639, 356 S.E.2d at 577; *Corpening,* 109 N.C. App. at 590–91, 427 S.E.2d at 895; *see also Carney*, 471 U.S. at 390–91, 85 L. Ed. 2d at 412–13.

*Corpening* is not binding authority on these facts to justify a "good faith" exception for the trial court, without hearing or additional evidence, to admit warrantless and illegally obtained evidence. *Corpening* could not and never eliminated ready mobility as a prerequisite to support the automobile or good faith exception for a warrant. The record and order on remand, now before us contains no evidence of the officers' awareness of—much less any reliance upon—the questionable precedent in *Corpening* when they searched the immobile vehicle and later the Defendant's person and her belongings without a warrant. *Corpening,* 109 N.C. App. 586, 427 S.E.2d 892. *See*: *Leon,* 468 U.S. at 913, 82 L.Ed.2d at 692. *Schmerber*, 384 U.S. at 769–70, 16 L. Ed. 2d at 919.

Both Trooper Sanders and Deputy Hicks testified their warrantless search of the vehicle was conducted solely to "find identification" of Kyle, the absent driver, and not pursuant to any other legal authority. The officers could not genuinely or objectively rely upon the reasoning in *Corpening* in any meaningful legal sense. *Id.*

- 17 -

The trial court's premise of a "change in law" to *post hoc* re-affirm its denial of Defendant's motion to suppress on remand, and the majority opinion's affirmance thereof, is legally erroneous and prejudicial to Defendant. *Leon*, 468 U.S. at 913, 82 L.Ed.2d at 692.

Absent proof by the State the officers had objectively acted "in reasonable reliance on binding precedent," the good faith exception in *Davis v. United States* is clearly inapplicable. *Davis*, 564 U.S. at 239–42, 180 L. Ed. 2d at 295–97. The Supreme Court of the United States emphasized in *Davis* the court-created exception from a constitutionally required warrant applies only when "binding appellate precedent specifically *authorizes* a particular police practice." *Id.* at 241, 180 L. Ed. 2d at 296–7 (emphasis original). *Leon*, 468 U.S. at 913, 82 L.Ed.2d at 692.

*Corpening* is not binding precedent, the opinion clearly misinterpreted the holding in *Isleib,* 319 N.C. at 639, 356 S.E.2d at 576; and no evidence tends to show the officers were even aware of it. The trial court erred by concluding the officers' wholly warrantless conduct had satisfied *Davis'* "good faith" and their objective reliance on binding authority. *Davis*, 564 U.S. at 239–42, 180 L. Ed. 2d at 295–97. *Leon*, 468 U.S. at 913, 82 L.Ed.2d at 692.

### H. Judge Stroud's CIRO Opinion

Answering a report from the former occupants of the vehicle, Trooper Sanders and Deputy Hicks arrived at what the trial court and the concurring opinion labels as a purported "hit-and-run" where the driver had left the scene or "run" after driving

off the road into a ditch. This single car reported accident resulted in only thing being "hit" was the ditch. The driver, "left the scene of the accident," a Class 1 misdemeanor, because he purportedly had outstanding warrants. We all agree even with probable cause, Sanders needed a warrant to search an immobile vehicle. U.S. Const. amend. IV.

Bystanders stated the driver had told them "he could not stay on the scene because he had warrants." Trooper Sanders asked whether the driver Kyle had left identification in the vehicle. The Bystanders did not know. Sanders then searched the vehicle without a warrant solely "for any evidence of the driver's identity." In the front passenger floorboard, where Defendant had purportedly been sitting, Saunders found a Nike bag. Defendant said it belonged to "Kyle." "Still searching for evidence of the driver's identity," Sanders opened the bag and found a black box "large enough to hold a driver's license." He opened it. The concurring opinion asserts: "So Sanders's mistake wasn't (sic) lacking probable cause; it was misjudging whether exigency still existed given the vehicle's immobility." Multiple officers were present, the scene was secure, no "exigency still existed" to excuse the warrant to search.

In the prior appeal our Supreme Court clearly held the automobile exception was inapplicable, because that exception requires vehicle mobility as "a fundamental prerequisite"—the vehicle "must be in a condition in which ready use is possible." *Julius*, 385 N.C. at 339, 892 S.E.2d at 861. The concurring opinion here correctly notes: "This vehicle, however, was immobile—stuck in a ditch, partially submerged,

unable to be driven—so "an exigency did not exist." *Id.* at 340, 892 S.E.2d at 861. The concurring opinion also correctly notes: "The [lead opinion]'s analysis seems to have [pre]sumed Sanders had probable cause to believe the vehicle contained evidence of the fleeing driver's identity. But even with probable cause, Sanders needed a warrant to search an immobile vehicle. U.S. Const. amend. IV."

The concurring opinion further correctly notes: "Probable cause alone has never justified a warrantless search—otherwise, officers could simply bypass the warrant requirement whenever they had probable cause. And (sic) the exclusionary rule doesn't (sic) ask whether officers had probable cause. It asks whether the search violated the Fourth Amendment." Probable cause is the express constitutional prerequisite for an officer to seek and for the magistrate or judge to issue the warrant. Otherwise, state actors would be free to detain, pillage, and rummage at whim. *See State v. Lewis*, 372 N.C. 576, 583, 831 S.E.2d 37, 43 (2019).

The Supreme Court of the United States' decision in *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768 (1981), established a bright-line rule authorizing substantially contemporaneous vehicle searches incident to arrests of recent occupants. *Id.* at 235 (citing *United States v. Gonzalez*, 71 F.3d 819, 822, 824-27 (11th Cir. 1996)). Years later, the Supreme Court in *Arizona v. Gant*, 556 U.S. 332 173 L.Ed.2d 485 (2009), modified and limited that rule, holding such searches incident to arrest are valid only if the arrestee remains within reaching distance of the passenger compartment. *Davis*, 564 U.S. at 234-35, 180 L. Ed. 2d at 292. Here, the warrantless

search of the vehicle *preceded* the arrest and search of Defendant and her effects. who was outside of and not inside or near the immobile vehicle, half submerged in a ditch.

The facts in and the majority's reliance upon *Davis* "does not present the markedly different question whether the exclusionary rule applies when the law governing the constitutionality of a particular search is unsettled." *Id.* at 250, 180 L. Ed. 2d at 303. When officers act "in the absence of case law (or other authority) specifically sanctioning such action, *exclusion of the evidence obtained may deter Fourth Amendment violations." Id.* (emphasis supplied). Judge Stroud agrees and notes: "So even if the law surrounding the automobile exception was unclear, that uncertainty undermines the trial court's and lead opinion's reasoning. The good-faith exception under *Davis* doesn't (sic) apply when officers act amid legal ambiguity. If officers are unsure whether the law permits a warrantless search, they know what to do: get a warrant[,]" as mandated by the Fourth Amendment. Our Supreme Court agreed and held prior to remand, "because the record demonstrates that the vehicle was immobile, an exigency did not exist and the automobile exception does not apply." *Julius*, 385 N.C. at 340, 892 S.E.2d at 861.

The concurring opinion and I also agree "the trial court misapprehended the legal question on remand. Whether "Trooper Sanders acted with an objectively reasonable belief that his search was lawful, and not with the culpability warranting exclusion" is a fact-intensive-based inquiry, where the State has the burden of proof beyond a reasonable doubt to overcome the constitutional violation. *State v. Scott*,

278 N.C. App. 354, 357, 861 S.E.2d 892, 894 (2021) (citing N.C. Gen. Stat. § 15A-1443(b) (2019)). On remand the trial court held no hearing, received no additional evidence, and prejudicially failed to find any legitimate basis to support a valid "good faith exception" to overcome the exclusionary rule and to deny Defendant's motion to suppress.

The trial court and both affirming opinions after remand also fail to recognize the good faith exception only applies where there was some demonstrated "good faith" action by the officers to seek or obtain judicial process, later held to be defective. *Leon*, 468 U.S. 897, 82 L. Ed. 2d 897. At least the lead opinion properly recognizes and demands "probable cause" to seek or support the issuance of a search warrant. U.S. Const. amend. IV

The concurring opinion obliterates the Fourth Amendment altogether by requiring nothing more than a *post hoc* review of the officer's purported "objectively reasonable belief," whatever that gibberish means, on any given day by any given officer or reviewing judge. The protective mandate and demands of the Fourth Amendment and Article 1, Sections 19 and 20 of the North Carolina Constitution are neither so flimsy nor pliable to allow either basis to support the illegal search and to admit the evidence thereof without the judicial oversight of a warrant to protect the sanctity and hard-won rights of the individual in the Bill of Rights and our State's Constitution. U.S. Const. amend. IV. N.C. Const. art. 1, §§ 19-20; *Scott*, 278 N.C. App. at 357, 357, 861 S.E.2d at 894.

### III.   Conclusion

The majority's affirming opinions improperly expand the "good faith exception" to a factual scenario where illegally obtained evidence was admitted, where no warrant was sought or issued.  Unlike in *Leon*, *Krull*, *Herring*, *Evans*, *Davis*, *Rogers,* and many other precedents*,* there was no deficient warrant sought or judicial process issued or change in precedent.  The majority's opinions create an expanded exception, subsumes the Constitutional warrant requirement, and allows "the 'good faith' exception" to "swallow the exclusionary rule."  *Id.* at 258, 180 L.Ed.2d at 308.

"[O]ur constitution demands the exclusion of illegally seized evidence.  The courts cannot condone or participate in the protection of those who violate the constitutional rights of others."  *State v. Borders*, 236 N.C. App. 149, 163, 762 S.E.2d 490, 502 (2014) (citation omitted).  It is not the role of the courts to excuse, slice, dice, parse, or diminish violations of fundamental constitutional rights by State actors.  Our sworn oaths demand exactly the opposite.  *See* N.C. Gen. Stat. § 11-11 (2023) ("I will administer justice without favoritism to anyone or the State[.]").

If not for the illegal search of the immobile vehicle involved in a voluntarily reported and single-car accident without physical injuries, would the Defendant have been arrested and would her person and effects have been searched?  Is there an objective basis and binding precedent to validate the officers' illegal actions and to admit the illegally obtained evidence?  The answer to both questions is clearly no.

Defendant's motion to suppress is properly allowed and her convictions based

upon the illegally obtained evidence are properly vacated.  I respectfully dissent.